WHITE SPOT CONSTRUCTION CORP. *vs.* JET SPRAY
COOLER, INC. & another.

Suffolk.    December 7, 1961. — June 29, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Damages,* For breach of contract, Nominal damages.    *Contract,* Building
contract.

A building contractor who could have been found to have made a contract
to construct a warehouse on the basis that he would be paid the cost of
its construction plus ten percent thereof, and to have been prevented by
the other party from performing the contract, was entitled only to nomi-
nal damages in an action of contract against the other party for his,
the contractor's, expected profit where he failed to prove with substan-
tial certainty what the cost to him of constructing the warehouse would
have been.

CONTRACT.    Writ in the Superior Court dated June 24,
1959.

At the trial before *Bolster, J.,* there were verdicts for the
plaintiff for nominal damages.

*Harry J. Williams (Samuel Newman* with him) for the
plaintiff.

*Joseph E. Levine* for the defendants.

WILLIAMS, J.    This is an action of contract by a building
contractor to recover damages for the alleged breach of a
contract to employ it in the erection of a warehouse in
Waltham.    There are two defendants, Jet Spray Cooler,
Inc. (Jet Spray), a Massachusetts corporation engaged in
the manufacture of beverage dispensers, and Ruth Jacobs,
trustee of the Yarmouth Real Estate Trust, owner of the
land on which the warehouse was to be built.    The negotia-
tions for building the warehouse were conducted by William
H. Jacobs, president and treasurer of Jet Spray and hus-
band of Ruth Jacobs, and Pasquale DeCillis, president of
the plaintiff.    It is agreed that Jacobs had authority to act
in the negotiations both for the corporation and for the
trustee.

The plaintiff's declaration contains two counts, one against each defendant. In each count, the plaintiff alleges that prior to April 10, 1959, the named defendant entered into a contract with the plaintiff to erect a warehouse "on a cost-plus basis." It was averred that the plaintiff was "ready, able and willing to carry out its contract" but was prevented by the defendant; "that the fair and reasonable cost of construction of the building in question in accordance with the above agreement was . . . [$150,000] and the defendant owes to the plaintiff as damages . . . [$15,000], the expected profit to the plaintiff."

There was evidence that Jacobs showed DeCillis plans for a two story building prepared by an architect, Lombardi, and that DeCillis submitted a bid of $240,000 for the building. This bid was not accepted and subsequently, while a set of revised plans was being prepared by one Canon who was suggested as an architect by DeCillis at the request of Jacobs, Jacobs asked DeCillis how much he thought the entire job was going to cost on the basis of these revised plans and DeCillis replied $150,000 more or less. He asked Jacobs for some assurance that he would get the job and Jacobs replied, "Patsy, you give me your hand, that's your job. 10 per cent, whatever the cost, the job." Thereupon they shook hands. Later, on March 27, 1959, White Spot delivered a letter to Jacobs, reading as follows: "Re: Proposed Warehouse . . . [t]he undersigned (treasurer of the plaintiff) hereby declares that he has carefully examined the plans and specifications, and has visited the site upon which the projected work is to be performed, and all conditions affecting the work. The undersigned proposes to furnish all the labor and materials required to complete the work as shown and described in the plans and specifications for the sum of $156,810." In April after some further talk Jacobs told DeCillis that he, Jacobs, would do the job himself. DeCillis testified that "[t]he actual cost of the work was estimated to be . . . [$142,000.00] and that his claim in this suit was for . . . [$14,200.00] . . . ." Jacobs testified that the building was erected by Yarmouth Real Estate Trust for Jet Spray and

that the cost of the building was $161,000 including $5,000 for engineering services.

The judge instructed the jury that if the letter of March 27, 1959, was a bid, there was no evidence that it was accepted and that the finding must be for the defendants; that if it was not a bid but only an estimate it could be found that there was a breach of the handshake agreement and that the jury must consider the question of damages. As to damages, he charged: There was no basis of fact on which it could have been found what the building would have cost the plaintiff. "[T]he fundamental principle of law upon which damages for breach of contract are assessed is that the injured party shall be placed in the same position he would have been in if the contract had been performed so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, so far as compensation therefor in money can be computed by rational methods upon a firm basis of fact." He instructed the jury that if they found the contract claimed by the plaintiff it would be entitled only to nominal damages.

The jury returned a verdict of one dollar for the plaintiff against each of the defendants. The case is here on a consolidated bill of exceptions of the parties. The plaintiff's exceptions are to the failure of the judge to give three instructions requested by the plaintiff and to his charge on the matter of damages.

We think that there was no error. The jury was warranted in finding that the parties entered into a bilateral contract at the time DeCillis and Jacobs shook hands by which the plaintiff agreed to construct the warehouse with the architect's plans as a basis when they were complete, and the defendants agreed to pay the cost of construction plus ten per cent; that the plaintiff stood ready to perform until Jacobs informed DeCillis that the defendants were going to act as their own general contractor; and that this action by the defendants prevented performance by the plaintiff and was a material breach of the contract. See

*Quintin Vespa Co. Inc.* v. *Construction Serv. Co.* 343 Mass. 547, 554.

If the plaintiff had performed its contract it would have been entitled to a sum equal to the cost of the material and labor required for the performance and in addition a fee amounting to ten per cent of the cost. *H. D. Watts Co.* v. *American Bond & Mortgage Co.* 267 Mass. 541, 552.

The established rule for ascertaining damages for breach of a building contract is stated in *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21–22. "[T]he injured party shall be placed in the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts. . . . [R]ecovery can be had where loss of profits is the proximate result of the breach, . . . and where it can be determined as a practical matter with a fair degree of certainty what the profits would have been. But profits cannot be recovered . . . when they are remote, or so uncertain, contingent, or speculative as not to be susceptible of trustworthy proof. They must be capable of ascertainment by reference to some definite standard, either of market value, established experience or direct inference from known circumstances. . . . This is simply a concrete application of the wider principle . . . to the effect that the complaining party must establish his claim upon a solid foundation in fact, and cannot recover when any essential element is left to conjecture, surmise or hypothesis."

Since the recoverable profits would be a percentage of the actual cost to the contractor of constructing the building, it was essential for the plaintiff to prove with substantial certainty what that cost would have been. This it failed to do. All that appears are estimates made by DeCillis at various times. At one time he estimated that the cost would be $150,000 more or less; at another, $156,810; and again, that the actual cost of the work would be $142,000.

It is contended that evidence that the cost of the completed building including engineering services was $161,000 is sufficient proof that it would have cost the plaintiff a similar amount, but it was not shown that the building as erected by Jacobs was like or similar to the contemplated structure which DeCillis purported to estimate. We are constrained to hold that the plaintiff's claim for damages rests on surmise and conjecture. The judge rightly instructed the jury that if they found a breach of contract only nominal damages could be awarded. There was no error in failing to give the requested instructions since they were predicated on the plaintiff's right to recover substantial damages.

The plaintiff's exceptions are overruled. In view of this disposal of the plaintiff's exceptions those of the defendants are waived.

*So ordered.*