*Western District*

## No. 180

## JOHN F. CANNON, d/b/a THE NEW CHECKERBOARD COFFEE SHOP
### v.
## YANKEE PRODUCTS CO., INC. and OCONOMOWOC CANNING COMPANY

Argued: May 3, 1976. Decided: February 3, 1977.

Case tried to *McCooey, J.,* in the Central District Court of Worcester. Number: 72T 898.

Present: Constantino, J., (Presiding)*; Larkin, Walsh, J.J.

**Walsh, J.** In this claim for lost profits a restaurant owner originally brought an action of contract against Yankee Products Co., Inc. (Yankee) for breach of express and breach of implied warranty. Later a complaint alleging negligence in preparation and canning was added against Oconomowoc Canning Co. (Oco).[1] The damages allegedly occurred after a dead worm was found in some canned peas purchased by the plaintiff from Yankee which were prepared and canned by Oco.

*There was evidence tending to show that* the plaintiff owned a restaurant on a plaza, which restaurant had a seating capacity for fifty-five customers, twenty-two at the counter and the remainder at tables. The plaza provided parking space for six hundred vehicles. The staff consisted of the plaintiff who was cook and assistant short order cook at noon and was assisted by his wife, one short order cook and, when busy, another waitress. Prior to February 1970 the restaurant was open from 5:30 or 6:00 A.M. to 6:00 P.M. and its busy time was at noon. During the latter part or in the last week of February 1970 the daily closing time was postponed until 11:00 P.M. At noon the plaintiff sold a daily special consisting of meat, a vegetable, a roll with butter and a beverage for ninety-nine cents.

---

* Judge Constantino participated in the hearing and post-hearing conference on this case but was not serving on the Appellate Division at the time of the rendition of this Opinion.

[1] The complaint was filed October 1, 1975 after the effective date of the Dist./Mun. Cts. R. Civ. P. The cause of action, however, preceded the amendment of G. L. 106, §2-318 (St. 1971 c. 670) so that lack of privity was still open as a defense to a manufacturer.

The plaintiff purchased vegetables from Yankee on a weekly basis and dealt with the same route salesman for three years. The plaintiff had purchased the same brand of canned sweet peas packed by Oco, from Yankee, for a period of six months to one year and on January 7, 1970 had purchased one-half of a case of such peas packed in sealed cans. The salesman told plaintiff that the peas were a good product, a big pea, good tasting, not hard and that he and his customers would be satisfied with them and this is the very best brand you can buy, good flavor, wholesome and will please your customers thus increasing your business.

On Friday, January 23, 1970, the plaintiff prepared and sold to his customers some of the canned peas purchased January 7, 1970, as part of the ninety-nine cent special. He opened a can of peas, placed the peas in a colander, strained them and washed them off. He then put the peas in a pot which had just been cleaned and wiped dry, heated the peas and put them in another pot designed for use in a steam table. He then served the peas to customers.

The worm was discovered by a customer in the "99 cent special" purchased by him. The plaintiff, having had his attention called to the presence of the worm, saw it in the peas on the customer's plate. The worm was skinny, green, dead and 1 1/3 inches in length.

The customer "made a stink" thereover in the presence of about fifty-five fellow patrons. Other customers exclaimed "oh! oh!". The plaintiff commented that the incidence or occurrence was just an accident. He refunded the price of the specially priced meals which had been served with the peas in question to the respective purchasers but the "word spread" and about thirty patrons walked out and the plaintiff refunded the price of their dinners to them. The plaintiff could neither remember the name of or remember the last time he saw the customer who found the worm on his plate.

After this incident the plaintiff observed a reduction in the number of customers patronizing his restaurant, particularly at the lunch hour. He took a ride around the area and observed many of his former customers eating elsewhere at other dining establishments.

Subsequent to the incident the plaintiff increased the number of hours of doing business. He remained open until 11:00 P.M., hiring a night man to do so. However, all of his efforts to increase the volume of his business were futile. According to the plaintiff "the word spread—the news got around." Consequently, he sold the business on February 1, 1971 and the place has changed hands three times since.

The gross sales of the plaintiff's business from July 1969 through November 1970 were as follows:

| "Gross Sales [sic] | Monthly Basis [sic] |
|---|---|
| July 1969 | $3,039.06 |
| August 1969 | 3,660.65 |
| September 1969 | 3,210.28 |
| October 1969 | 3,682.23 |
| November 1969 | 3,346.18 |
| December 1969 | 3,388.42 |
| January 1970 | 3,206.09 |
| February 1970 | 3,261.49 |
| March 1970 | 3,471.79 |
| April 1970 | 3,165.21 |
| May 1970 | 2,966.78 |
| June 1970 | 2,537.69 |
| July 1970 | 1,505.14 |
| August 1970 | 2,440.98 |
| September 1970 | 2,712.63 |
| October 1970 | 3,006.55 |
| November 1970 | 2,484.83" |

On the Monday following the incident the plaintiff told Yankee's salesman about it and believes he also showed him the worm. The salesman said he would report it to his superiors. After the plaintiff told him about the worm in the peas the salesman said he

doubted it and that nothing could be done about it anyway. Plaintiff said, "well, we'll see."

The defendants filed requests for rulings with the court that the evidence did not warrant findings as follows: that Yankee made any warranty, express or implied; that the plaintiff suffered any loss or damage as a result of any breach of warranty; that the plaintiff gave proper notice; that Oco was negligent and that the peas contained harmful or deleterious substance and were otherwise harmful. The trial justice denied the requests and made specific findings of fact which we believe were supported by the evidence. The defendants also requested a ruling that "with the exception of the instant sale of a meal in which a worm is alleged to have been found, the evidence does not warrant a finding that the plaintiff lost any profit because of a breach of warranty or negligence on the part of the defendants, or either of them." The judge denied this request for ruling as being "inconsistent with and inapplicable to said Court's factual finding and its application of the law deemed apt and proper thereto."

Extensive findings of fact were made and those pertinent to the denial of the above request are set forth as follows:

That shortly after the incident the plaintiff observed most of his former customers eating elsewhere; that there was a "vacuum of evidence" that this was due to any fault of the plaintiff; that plaintiff's dedicated efforts to recoup his lost patronage by increasing his hours and hiring additional help proved futile; that prior to the incident the restaurant had the reputation of serving wholesome food; that subsequent to the incident it no longer had this reputation; that the incident caused to patrons to remain away from the restaurant, damaged its reputation for serving clean, wholesome food and was the sole, direct, proximate and efficient cause of the loss of patrons to plaintiff's monetary detriment; that Yankee's breaches of war-

ranty rendered it liable for whatever damages that followed reasonably within the contemplation of the parties at the time the sale was made and the loss of patronage and diminution of monthly receipts could reasonably have been within the contemplation of the parties at the time of sale had the parties given thought to the consequences likely to ensue; that the loss of prospective profits was neither conjectural, speculative nor too remote to be allowed as an element of damage; that mathematical accuracy of proof is not required and that a fairly accurate estimate of the average monthly profits based upon a comparison of the monthly income before and after the episode is not beyond the realm of ascertainable proof; that although contingencies might have arisen to cause loss of patronage, it could not be ruled as a matter of law that it would be impossible for a fact finder with a reasonably probable degree of certainty to find, absent the incident, that the plaintiff would have retained substantially the same number of patrons throughout the duration of time he operated the restaurant and therefore, were it not for the defendants' breaches of warranty and negligence, the plaintiff would have retained substantially the same average number of patrons in the foreseeable future.

The findings also explained the computation and assessment of damages: that the gross sales for the six-month period from July 1969 through December 1969 totalled $20,320.82 for a monthly average of $3,386.80; that the gross sales beginning February 1, 1970 through November 1970 totalled $27,499.09 for a monthly average of $2,749.90; that plaintiff's average monthly diminution of receipts was $636.90 computed by subtracting the monthly average after the

incident from the monthly average before; that plaintiff's damages based upon average diminution of sales for the twelve-month period beginning February 1, 1970 was $636.90 multiplied by twelve or $7,622.80. The court then found for the plaintiff on Counts 1 and 2 against Yankee and on the complaint against Oco in the amount of $7,622.80.

The issue is thus presented as to whether the findings made were justified or not upon the evidence presented and whether correct principles of law were applied pertaining to lost or prospective profits.

It is recognized that loss of profits may be recovered as an element of damages for breach of contract, but it may be difficult to fit the applicable law to a particular case. "The loss of prospective profits may be allowed . . . where it appears that the loss was the natural, primary and probable consequence of the breach, that the profits arising from the performance non-performance were within the contemplation of the parties, and the profits were not so uncertain or contingent as to be incapable of reasonable proof." *Gagnon v. Sperry & Hutchinson Co.,* 206 Mass. 547, 555 (1910). They must be the proximate result of the breach and can't be recovered when they are remote or so uncertain, contingent or speculative as not to be suseptible of trustworthy proof. A claimant cannot prevail when any essential element is left to conjecture, surmise or hypothesis. "The difficulty is not so much in the statement of the general principle as in applying it. A comparatively insignificant incident may be in such combination with others as to lead to a conclusion in one decision apparently at variance with that reached in others. Each case must be decided on its own facts under this necessarily somewhat broad and comprehensive proposition." *John Hetherington & Sons, Ltd. v. William Firth Co.,* 210 Mass. 8, 21-22 (1911). *White Spot Construction Corp. v. Jet Spray Cooler, Inc.,* 344 Mass. 632, 635 (1962).

A leading case allowing recovery for lost profits involving the sale of food and relied on by the plaintiff, is *Hawkins v. Jamrog,* 277 Mass. 540 (1931). The plaintiff in that case was the proprietor of a boarding house conducted for college students. The defendant sold dressed turkeys to the plaintiff, knowing their intended use as food in the boarding house. The turkeys were unwholesome and after eating them the plaintiff, all the student waiters and almost all of the boarders were made ill. There was evidence that of the seventy original boarders only thirty returned despite plaintiff's efforts to induce them to do so and also evidence of the average weekly profit per boarder. It was held that an award of loss of prospective profits to the end of the school year was neither too remote to be allowed as an element of damage nor merely speculative or conjectural in nature.

The Uniform Commercial Code is also applicable here and G.L.c. 106, §2-714 (3) provides that in addition to damages for loss recoverable from a seller's breach in the ordinary course of events, consequential damages may also be recovered in a proper case under §2-715. §2-715 (2) provides that "consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty."

We think the case at bar is distinguishable from *Hawkins v. Jamrog,* 277 Mass. 540. In both cases the plaintiffs purchased food products for resale and their

respective vendors had reason to know it. However, in *Hawkins* the plaintiff's customers at the unwholesome food and a substantial number became ill. Such was not the case here. The customer who saw the worm probably would not have had a cause of action for personal injury. *Wheeler v. Balestri,* 304 Mass. 257, 259 (1939). (Cockroaches in bread, no lia.). *Sullivan v. H. P. Hood & Sons, Inc.,* 341 Mass. 216, 223 (1960). Certainly those who didn't see it would not have had any such claim.

The fact that the exodus of the customers was caused as much by the utterances of the obviously upset customer as by the presence of the worm and the fact that no one was made ill by the alleged unwholesome food would seem to take the loss of customers out of the natural and probable consequences of the breach. If for no other reason we feel these are incidents, not necessarily insignificant, which render a finding of loss of profits in this case not warranted. On the same grounds we do not think this is, in the words of G.L.c. 106, §2-714 (3), "a proper case" for the recovery of consquential damages under the provisions of G.L.c. 106, §2-715.

With respect to the amount of the loss of profit, we do not find in the report any direct evidence of that nature. Prospective profits need not be proved to mathematical certainty, but in order to recover they must be proved. *Gagnon v. Sperry & Hutchinson,* 206 Mass. 547, 556. Here there was evidence of diminution of receipts or sales but no evidence of how much of this constituted loss of profit. *Snelling & Snelling of Massachusetts, Inc. v. Wall,* 345 Mass. 634, 635-636 (1963). There was basis for an opinion, perhaps, but no opinion or calculation.

The plaintiff fares no better in his complaint alleging negligence on the part of the canner of the product since he has the burden to establish that the defendant's breach of duty was the proximate cause of his claimed loss of profit. "One is bound to anticipate and provide against what usually happens and what is likely to happen, but is not bound in like manner to guard against what is unusual and unlikely to happen, or what, as is sometimes said, is only remotely and slightly probable." *Falk v. Finkelman,* 268 Mass. 524, 527 (1929). *Zompanti v. Ferguson,* 336 Mass. 167, 169 (1957).

We find that on the complaint for negligence against the defendant canning company the plaintiff is not entitled to recover damages. Even though negligence may be found, there is no invasion of rights and no right of action unless legal damage is caused. *Demody v. Utley,* 328 Mass. 209, 212 (1952). With respect to the counts in contract against the vendor the situation is different. The plaintiff alleged in his declaration loss of customers and business but apparently offered no evidence on any out-of-pocket loss for the purchase of the goods or money refunded to his customers. However, the breach, once established, entitled the plaintiff to at least nominal damages. *Rombol a v.Cosindas,* 351 Mass. 382, 384 (1966). *Nathan v. Tremont Storage Warehouse, Inc.,* 328 Mass. 168, 171 (1951).

It is our determination that there has been prejudicial error in the denial of defendants' request for ruling relating to loss of profit. Accordingly, the judgments entered in Counts 1 and 2 are modified and judgment is to be entered for nominal damages in each count. On the complaint, judgment for the plaintiff is vacated and judgment is to be entered for the defendant.