THE HARTFORD CASUALTY INSURANCE COMPANY *vs.* THE
NEW HAMPSHIRE INSURANCE COMPANY.

Suffolk. November 1, 1993. - February 17, 1994.

Present: WILKINS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Civil*, Instructions to jury, Judgment notwithstanding verdict,
New trial. *Insurance*, Insurer's obligation to defend, Settlement of
claim. *Negligence*, Insurance company. *Consumer Protection Act*,
Availability of remedy, Unfair act or practice, Insurance.

Discussion of the nature of the duty that a primary insurer owes to its
policyholder (and, therefore, to a subrogated excess insurer) with re-
spect to the settlement of a third-party claim. [118-120]

Statement of the negligence standard by which the actions of an insurer
concerning settlement of a claim against its insured will hereafter be
tested. [121]

In an action by a subrogated excess insurer against its insured, the pri-
mary insurer in an underlying tort action, in which the plaintiff con-
tended that the judge failed to instruct the jury properly concerning the
standard the jury should have applied, and the factors the jury should
have considered, in deciding whether the defendant was liable for fail-
ing to settle the underlying action within the coverage limits of its pol-
icy, there was no prejudicial error in any of the challenged jury instruc-
tions, all of which concerned the issue of the defendant's lack of good
faith, where the jury, on substantially unchallenged instructions, found
that the defendant was not negligent. [121-123]

In an action by a subrogated excess insurer against its insured, the pri-
mary insurer in an underlying tort action, in which the plaintiff con-
tended that the defendant was liable for the plaintiff's excess loss pay-
ment because the defendant improperly failed to settle the claim within
the limits of the primary coverage, the plaintiff's motion for judgment
notwithstanding the verdict was properly denied, where, as a matter of
law, the defendant was not negligent nor did it act in bad faith; nor did
the judge abuse her discretion in denying a new trial on the claimed
ground that the verdict was against the weight of the evidence. [123-
124]

In an action by a subrogated excess insurer against its insured, the pri-
mary insurer in an underlying tort action, in which the plaintiff con-
tended that the defendant was liable for the plaintiff's excess loss pay-

ment because the defendant improperly failed to settle the claim within the limits of the primary coverage, the plaintiff failed to demonstrate that it was prejudiced by the judge's refusal to instruct the jury, as requested, that the defendant, as the primary insurer, had a direct duty of care to the plaintiff as a known excess insurer. [124-125]

In an action by a subrogated insurer against its insured, the primary insurer in an underlying tort action, in which the plaintiff contended that the defendant was liable for the plaintiff's excess loss payment because the defendant improperly failed to settle the claim within the limits of the primary coverage, the judge did not err in rejecting a claim by the plaintiff based on G. L. c. 93A and G. L. c. 176D, where there was no evidence of a causal relationship between the alleged unfair acts and the claimed loss, and where the acts were found to be otherwise free from deception. [125]

CIVIL ACTION commenced in the Superior Court Department on December 16, 1988.

The case was tried before *Margot Botsford*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*John J. McGivney* (*Thomas D. Burns* with him) for the plaintiff.

*Erik Lund* (*Paul A. Izzo* with him) for the defendant.

WILKINS, J. The case prompts us to consider, for the first time in more than forty-five years, the nature of the duty that a primary insurer owes to its policyholder (and, therefore, to a subrogated excess insurer) with respect to the settlement of a third-party claim. A jury returned a verdict in a tort action against an insured substantially in excess of the $500,000 primary coverage provided by the defendant, The New Hampshire Insurance Company. The plaintiff, The Hartford Casualty Insurance Company, which provided excess coverage on the claim, paid $1,500,000 to satisfy its insured's and its obligation in excess of the primary coverage.

In this action, Hartford, subrogated to its insured's rights against New Hampshire, argues that New Hampshire is liable for Hartford's excess loss payment because New Hampshire improperly failed to settle the claim within the limits of the primary coverage. The judge submitted Hartford's case

to a jury on the question of both New Hampshire's bad faith failure to settle the underlying tort action and its negligent failure to do so. The jury decided against Hartford on each theory, and judgment entered for New Hampshire. We granted Hartford's application for direct appellate review and now affirm the judgment.

In October, 1984, Allen M. Christofferson, an employee of a novelty business which had warehouse space in a building on Broad Street in Boston, fell into an elevator shaft from the first-floor landing of the building while moving items into the warehouse space. There was evidence that Christofferson knew that the gate to the elevator shaft had been tied up and that the shaft would be wide open if the elevator cab had been moved to another floor. Christofferson, who sustained substantial injuries from his fall, brought an action against the owner of the building, an insured of both New Hampshire and Hartford, and later added as a defendant Northeast Elevator Company on the theory that it had negligently inspected and maintained the elevator. We shall from time to time refer to Christofferson's action as the underlying action.

Much of the evidence in the case before us concerned the manner in which New Hampshire handled the defense of the underlying action, what New Hampshire reasonably should have known about the prospects of a verdict in excess of the primary coverage, whether a settlement could have been reached within the limits of the primary coverage, and whether a reasonable insurer in New Hampshire's position would have settled the case within those policy limits before or during trial. We need not recite the detail of that evidence. It is sufficient to say that the evidence presented a case for the jury on New Hampshire's liability to Hartford.

On appeal, Hartford first challenges various aspects of the judge's charge to the jury with respect to its claim that New Hampshire lacked good faith in failing to settle the underlying action within the policy limits. As will be seen, these objections to the jury instructions on good faith, even if sound, are not important because the jury, on substantially unchallenged instructions, found that New Hampshire was not neg-

ligent. The jury instructions argument leads us to the question of (1) what a primary insurer's duty is concerning settlement of a claim. We then proceed to reject Hartford's remaining three claims that (2) the judge erred in denying Hartford's motion for a judgment notwithstanding the verdict and, alternatively, for a new trial; (3) the judge erred in not submitting the case to the jury on Hartford's claim that New Hampshire was directly liable to it; and (4) the judge erroneously rejected Hartford's G. L. c. 93A (1992 ed.) claim.

1. Hartford argues that the judge failed to instruct the jury properly concerning the standard the jury should apply, and the factors the jury should consider, in deciding whether New Hampshire was liable for failing to settle the underlying action within the coverage limits of its policy.

The general rule in this Commonwealth is that an insurer is held to a standard of reasonable conduct in its defense of its insured. See *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 684 (1964); *Abrams* v. *Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 143 (1937). Although an insurer may be liable for its negligent handling of the defense (tort) and for its negligent failure to carry out its promise to defend (contract) (*Abrams* v. *Factory Mut. Liab. Ins. Co.*, *supra* at 143-144), the liability of an insurer with respect to its refusal or failure to settle a claim against its insured has traditionally been decided on the standard of whether the insurer exercised good faith judgment on the subject. *Id.* at 145. Our opinions since the *Abrams* case have continued to recognize that the obligation of an insurer concerning settlement "is to act in good faith." See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 97 (1983); *Colsch* v. *Travelers Ins. Co.*, 361 Mass. 873, 874 (1972); *Jenkins* v. *General Accident Fire & Life Assurance Corp.*, 349 Mass. 699, 702 (1965); *Murach* v. *Massachusetts Bonding & Ins. Co.*, 339 Mass. 184, 187 (1959).[1]

---

[1]Our opinion in *Deerfield Plastics Co.* v. *Hartford Ins. Co.*, 404 Mass. 484 (1989), did not announce a contradictory rule. There, the insurer

We have defined good faith by saying that a negligent failure to settle when a reasonably prudent insurer, exercising due care, would have settled would not be enough. See *Abrams v. Factory Mut. Liab. Ins. Co., supra* at 145. The explanation offered in the *Abrams* opinion for the difference in the standards is that the insurance policy imposed on the insurer a duty to defend covered claims, whereas the policy granted the insurer the option to settle and contained no explicit promise or duty concerning settlement. See *id.* at 144-145.

The line between the nature of the settlement duty and the nature of the defense duty is not as sharp as what we have just said would make it seem. Even in its initial articulation, the distinction was hedged and today seems unwarranted. The *Abrams* opinion itself announced that the court "need not decide that there can never be actionable negligence of any kind in connection with the handling of settlements." *Id.* at 145. Our opinions, although adhering to the good faith test, have recognized as relevant to that issue evidence of what a reasonable insurer would do in the circumstances. Good faith requires that any settlement decision be made without regard to the policy limits and that the insurer "exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based." *Murach v. Massachusetts Bonding & Ins. Co., supra* at 187. We have held that a finding of bad faith in the settlement of a claim against an insured was warranted by evidence of what the practice of the industry was in similar circumstances and by expert testimony that the insurer violated sound claims practices in not resolving a coverage question in

---

settled a worker's compensation claim after it had negligently failed to investigate that claim. The result was that, because of retrospective rating of premium charges, the insurer unlawfully charged the entire amount paid in settlement to the insured employer. That opinion, which essentially concerned a claim for refund of premium overpayments, did not consider the difference between good faith and negligence in the settlement of a claim against a policyholder, nor did it adopt any new standard for measuring an insurer's obligation to its insured in the settlement of claims.

favor of its insured. See *DiMarzo* v. *American Mut. Ins. Co.*, *supra* at 98-99.

The measures of objective good faith considered in our *Murach* and *DiMarzo* opinions come close to adopting a negligence standard. Although the various labels applied to describe an insurer's duty vary (negligence, bad faith, subjective good faith or objective bad faith), the trend in this country as a practical matter is toward the use of a negligence standard. See 7C J. A. Appleman, Insurance Law and Practice § 4713 (Berdal ed. 1979 & Supp. 1993); 14 G. Couch, Insurance § 51:5 (Rhode's rev. 2d ed. 1982 & Supp. 1993); W. Shernoff, S. Gage & H. Levine, Insurance Bad Faith Litigation, § 3.03 [1][a], at 3-10—3-12 (1993 & Supp. 1993). See, e.g., *Farmers Group, Inc.* v. *Trimble*, 691 P.2d 1138, 1142 (Colo. 1984) (announcing negligence standard based in quasi-fiduciary relationship); *Maine Bonding & Casualty Co.* v. *Centennial Ins. Co.*, 298 Or. 514, 518-519 (1985) (announcing negligence standard).

It is not easy to explain in practical terms why an insurer should be liable for the negligent handling of the defense of a covered claim and not liable for the negligent handling of the subject of settlement. When the *Abrams* case was decided, there was no G. L. c. 176D (1992 ed.) concerning unfair or deceptive acts or practices in the business of insurance, including unfair settlement practices (G. L. c. 176D, § 3 [9]).[2] One statutory unfair practice is the failure "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." § 3 (9) (f). If, as is true, an insurer can be liable to a claimant for unfair claim settlement practices (see G. L. c. 93A, § 9 [1992 ed.], which imposes standards of reasonable care), an insurer should be likewise liable to its insured for negligence in the handling of the settlement of a claim against its insured.

---

[2]The current version of G. L. c. 176D (1992 ed. & Supp. 1993) was inserted by St. 1972, c. 543, § 1, replacing a considerably less virulent G. L. c. 176D, inserted by St. 1947, c. 659.

The negligence standard by which the actions of an insurer concerning settlement will be tested hereafter will be in practice not significantly different from the good faith test that has been evolving in this Commonwealth. The test is not whether a reasonable insurer might have settled the case within the policy limits, but rather whether no reasonable insurer would have failed to settle the case within the policy limits. This test requires the insured (or its excess insurer) to prove that the plaintiff in the underlying action would have settled the claim within the policy limits and that, assuming the insurer's unlimited exposure (that is, viewing the question from the point of view of the insured), no reasonable insurer would have refused the settlement offer or would have refused to respond to the offer.[3]

There was no prejudicial error in any of the challenged jury instructions, all of which concern the issue of New Hampshire's lack of good faith. The judge also instructed the jury on the issue of New Hampshire's negligence, and, by a special verdict, the jury answered that New Hampshire did not act negligently in failing to settle the underlying claim within its insured's policy limits. Hartford presents no focused challenge to the judge's instructions on negligence.[4] Hartford's concerns about the judge's instructions on the question of New Hampshire's good faith become unimportant. If New Hampshire was not negligent, it could not be held liable for a lack of objective good faith, the standard that Hartford urged was the appropriate one for testing New Hampshire's good faith and a standard that is the same as or less strict than a negligence standard.

---

[3]This case does not present the issue of an insurer's obligation to an excess insurer when a settlement offer is made in excess of the policy limits and settlement could not have been made within those limits.

[4]Hartford requested jury instructions on its negligence claim. New Hampshire objected, arguing that a lack of good faith was the only proper test to apply. The judge wisely decided to avoid, if possible, a retrial of the case if, on appeal, negligence were recognized as a proper standard. She, therefore, gave the question of New Hampshire's negligence to the jury over New Hampshire's objection.

We shall consider one portion of Hartford's challenge to the jury instructions on good faith because Hartford argues, briefly and obliquely, that an error in the charge on good faith infected the jury's consideration of the negligence claim.[5] The claim is that the judge told the jury that they should decide, on the issue of good faith, whether New Hampshire had received a firm settlement offer within its policy limits. The judge issued no such mandate. In listing circumstances that could be considered on the question of New Hampshire's good faith belief in the reasonableness of its conduct, the judge said: "You may also consider on the issue of lack of good faith, whether or not there was a firm settlement offer within New Hampshire's policy limits, that New Hampshire was obliged to consider. Again, it is for you to decide whether there was a firm settlement offer on behalf of the plaintiff made, conveyed to New Hampshire and that it was within the policy limits of New Hampshire." The judge did not make the existence of a firm settlement offer a necessary condition for finding a lack of good faith, as New Hampshire wanted her to do. She stated correctly that the existence of such an offer, if there had been one (an issue in

---

[5]The other two areas of challenge, which we need not analyze, concern Hartford's assertion that (1) the judge should have told the jury that a standard of objective reasonableness should be used in judging whether New Hampshire acted in good faith and (2) the judge erred in not listing factors that would tend to show bad faith.

The judge in fact did not present the good faith issue solely in terms of whether New Hampshire acted in subjective good faith.

Hartford's objection to the absence from the charge of factors tending to show bad faith focuses on a claimed error in what the judge told the jury about reliance on the opinion of its counsel. Hartford claims that the judge told the jury that reliance on the advice of counsel should be considered proof of good faith. The judge did not go so far. The judge said correctly that if "an insurance company reasonably relies on the diligent, good faith evaluation of the case, by its counsel, this may be considered as some evidence of good faith." Cf. *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14 (1989); *Van Dyke* v. *St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 677 (1983).

dispute on the evidence), was a factor the jury could consider.[6]

We should advert to one further point. It is conceivable that, on an objective standard of reasonableness, an insurer would have been warranted in not settling a case but that the insurer's decision was in fact motivated by subjective bad faith. In such a case, a charge on negligence would not obviate the need for a subjective bad faith jury instruction. In this case, the evidence arguably did not require such an instruction, but the judge's charge adequately included the issue of subjective bad faith within the question on good faith put to the jury and decided in New Hampshire's favor.

2. The trial judge did not err in denying Hartford's motion that sought a judgment notwithstanding the verdict and alternatively sought a new trial on the asserted ground that the verdict was against the weight of the evidence. Taking the evidence most favorable to New Hampshire, as we must (see *McAvoy* v. *Shufrin*, 401 Mass. 593, 596 [1988]), we conclude that New Hampshire was not negligent nor did it act in bad faith, as a matter of law. It is a rare case in which a directed verdict is warranted for the party with the burden of proof.

The judge did not abuse her discretion in denying a new trial on the claimed ground that the verdict was against the weight of the evidence. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 802 (1987). Hartford argues that it is obvious that New Hampshire should have settled the underlying case because the defendant's liability in the underlying action was certain and that it was clear that any jury verdict would certainly exceed the primary coverage. This argument is based on a marshaling of only evidence favorable to Hart-

---

[6]She rightly also rejected Hartford's request, based on *Rova Farms Resort, Inc.* v. *Investors Ins. Co.*, 65 N.J. 474, 493 (1974), that she instruct the jury that New Hampshire had an affirmative duty to explore settlement possibilities. On the negligence test we now adopt, the question would be whether it was unreasonable at one or more points for New Hampshire not to explore settlement (i.e., no reasonable insurer would have failed in the circumstances to pursue settlement possibilities).

ford (and, therefore, an ignoring of contrary evidence). The prospect was not minimal that the jury in the underlying action would find that the plaintiff had negligently contributed to his injuries by backing into an elevator shaft, whose door he knew had been tied open, and dragging a pallet truck on top of himself. Nor was it clear that a jury would absolve of all fault, as it did, the other defendant in the underlying action, the elevator maintenance and service company.

3. Hartford objects that the judge refused to instruct the jury, as requested, that New Hampshire, as the primary insurer, had a direct duty of care to Hartford as a known excess insurer. Hartford cites no substantial authority in support of the existence of a direct duty.[7] New Hampshire's direct duty, if any, to Hartford would be no greater than New Hampshire's duty to its insured. See W. Shernoff, S. Gage, & H. Levine, Insurance Bad Faith Litigation § 2.04 [3], at 2-40 n.63 (1993 & Supp. 1993), citing *Twin City Fire Ins. Co.* v. *Superior Court*, 164 Ariz. 295, 296 (1990) (rejecting direct duty theory as redundant of equitable subrogation). We need not decide whether a primary carrier ever could owe a direct duty to an excess carrier concerning the primary carrier's handling of its obligations to the insured because, if such a duty existed here, Hartford has not shown

---

[7]The absence of supporting citations is explicable. The general rule is that an excess insurer has a claim based on equitable subrogation but no right to a direct action against the primary insurer. See *Continental Casualty Co.* v. *Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 107 (2d Cir. 1991); *Certain Underwriters at Lloyd's, London* v. *Fidelity & Casualty Ins. Co.*, 4 F.3d 541, 547 (7th Cir. 1993) (Coffey, J., dissenting); Syverud, The Duty to Settle, 76 Va. L. Rev. 1113, 1203-1204 (1990) ("Almost every state now permits the excess insurer to litigate the reasonableness of a primary insurer's failure to settle; a *few have suggested* that primary insurers have a direct fiduciary duty to excess insurers to act with the utmost good faith in handling claims" [emphasis added]); Butler & Potter, The Primary Carrier Caught in the Middle With Bad Faith Exposure to Its Insureds, Excess Carriers and Reinsurers, 24 Tort & Ins. L.J. 118, 125 (1988) ("In summary, many cases can be found which discuss the primary carrier's duty of good faith to an excess carrier; *essentially all such cases turn on well known principles of subrogation*" [emphasis added]).

that it was prejudiced by the judge's refusal to instruct the jury on the subject.

4. Hartford complains that the judge erred in rejecting its claim based on G. L. c. 93A and G. L. c. 176D. The judge decided this issue after the jury returned their verdict. Hartford fundamentally claims that certain of the judge's findings of fact were clearly erroneous. The judge observed that Hartford suffered a loss because the underlying tort action ended in a verdict beyond New Hampshire's policy limits and that the loss could have been avoided only if that action had been settled. She assumed, for the purposes of analysis, that New Hampshire had been negligent in its early investigation of the underlying action, but considered that Hartford had not proved that any such negligence was related to New Hampshire's failure to settle the underlying action and thus to avoid the jury verdict. Therefore, any claim of an unfair act or practice, lacking a causal link, failed. Similarly, the judge found that New Hampshire's conduct was not deceptive and, moreover, that Hartford had not been misled or harmed by any acts that Hartford claimed were deceptive. Hartford has not met its heavy burden of showing that any of the judge's findings of essential fact concerning the G. L. c. 93A claim are clearly erroneous. The absence of proof of causation is fatal to Hartford's G. L. c. 93A and G. L. c. 176D claims. See *Massachusetts Farm Bureau Fed'n, Inc.* v. *Blue Cross of Mass., Inc.*, 403 Mass. 722, 730 (1989).

*Judgment affirmed.*