USCA1 Opinion

 

 March 6, 1996 [Not for Publication] [Not for Publication] United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1100 FIRST STATE INSURANCE COMPANY, Plaintiff, Appellant, v. UTICA MUTUAL INSURANCE COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Myles W. McDonough, with whom Robert H. Gaynor and Sloane and ___________________ _________________ ___________ Walsh, were on brief for appellant. _____ Eugene G. Coombs, Jr., with whom Jeffrey A. Novins and Kilburn, ______________________ __________________ ________ Casey Goscinak & Coombs were on brief for appellee. _______________________ _____________________ _____________________ STAHL, Circuit Judge. Excess insurer First State STAHL, Circuit Judge. _____________ Insurance Company ("First State") sued primary insurer Utica Mutual Insurance Company ("Utica"), claiming that Utica unreasonably and in bad faith failed to settle a claim within the primary policy limits, resulting in a significant payout by First State on the excess policy. The district court, sitting without a jury, found that Utica indeed acted unreasonably and in bad faith, but that First State failed to prove that the underlying claim could have been settled at any time for less than the amount actually paid. Consequently, the district judge ruled that First State failed to prove that it was harmed by Utica's actions, and entered judgment for defendant Utica. First State appeals. Finding no reversible error, we affirm. I. I. __ BACKGROUND BACKGROUND __________ We begin by summarizing the facts as found by the district court, reported in detail in First State Insurance _____________________ Co. v. Utica Mutual Insurance Co., 870 F. Supp. 1168, 1169-74 ___ __________________________ (D. Mass. 1994) (Stearns, J.). This dispute between insurers is a by-product of the tragic 1983 drowning of a five-year- old boy at a bridge construction site. The boy, attempting to traverse a plank leading to a bridge support pier, slipped and fell into the river and drowned. His body was not recovered for several weeks. -2- 2 The bridge contractor had not fenced in the construction site, which was adjacent to a playground, nor had it hired security guards or posted the site with warning or "no trespassing" signs. Prior to the accident, the contractor was aware that children and vandals were trespassing on the site. The contractor found more than once that someone had placed planks to allow access from the shore to the support piers in the middle of the river.  In November 1983, the parents, represented by the law firm of Mardirosian & Barber, brought a wrongful death action against the contractor in Massachusetts state court. Utica, the primary liability insurer for the contractor, had provided a $500,000 policy, of which it had reinsured $300,000 with Prudential Reinsurance, limiting its actual loss exposure to $200,000. First State had issued an excess liability policy to the contractor in the amount of $15,000,000. Utica, as the primary carrier, was obligated to provide the contractor with a defense, and in late 1983 it retained the firm of Roche & Heifetz for that purpose. The wrongful death case proceeded at a leisurely pace. During the six years following the filing of the claim, the parties' lawyers had several inconclusive settlement discussions. On February 6, 1989, two days before the start of trial, Utica offered its entire $500,000 policy limit to settle the case. The offer was rejected. Utica -3- 3 then tendered its policy to First State, effectively turning over control of the settlement negotiations to First State. Trial began on February 8, 1989. On the second day of trial, First State made a $750,000 settlement offer, but that was rejected. Subsequent offers of $1,000,000 and $1,100,000 were also rejected. On the fifth day of trial, with the help of the trial judge, the case was settled for $1,250,000 . Utica thus paid $500,000 under the primary policy ($300,000 of which was reinsured) and First State paid $750,000 under the excess policy. In November 1989, First State brought a diversity action against Utica in the United States District Court for the District of Massachusetts, alleging that Utica's refusal to pursue a reasonable settlement of the wrongful death case caused First State to lose the $750,000 paid in excess of Utica's policy limit. After a six-day bench trial, the district judge ruled that Utica had indeed acted unreasonably and in bad faith in not seriously pursuing settlement long before trial. But the district judge found that First State had failed to prove that the boy's parents would probably have settled for less than the $1,250,000 actually paid, and held therefore that First State failed to show it had been harmed by Utica's actions. First State asserts on appeal that the judge's factual finding on the potential for a less-costly settlement -4- 4 was clearly erroneous. This is a fact-bound appeal, and we will focus in some detail on the evidence relevant to the settlement question. Because appellee Utica has not argued that the district judge erred in ruling that Utica breached its duty to pursue settlement reasonably, we accept that ruling without further analysis. We do note, though, that the legal issue in this case, the duty of a primary insurer to an excess insurer, is controlled by Hartford Casualty __________________ Insurance Co. v. New Hampshire Insurance Co., 628 N.E.2d 14, _____________ ___________________________ 16-19 (Mass. 1994). II. II. ___ DISCUSSION DISCUSSION __________ When, as here, a district court sits as the trier of fact, its determinations are accorded great respect. Langton v. Johnston, 928 F.2d 1206, 1218 (1st Cir. 1991). _______ ________ Federal Rule of Civil Procedure 52(a)1 dictates that we review such factual findings only for clear error. The clear error test is rigorous:  ____________________ 1. Fed. R. Civ. P. 52(a) provides in pertinent part: In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. -5- 5 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 ________ _______________________ (1985). We do not set aside a district court's findings of fact unless "on the whole of the record, we form a strong, unyielding belief that a mistake has been made." Cumpiano v. ________ Banco Santander Puerto Rico, 902 F.2d 148, 152 (1st Cir. _____________________________ 1990). Because the record in this case supports two permissible views of the evidence, we discern no clear error. A. Was settlement possible within Utica's $500,000 policy _____________________________________________________________ limit? ______ A number of documents presented at trial suggested that the lawyers for the plaintiff-parents had, at one time, valued the case in the $200,000 to $250,000 range. A memorandum to Utica from defense attorney Therese Roche referred to a statement in 1984 by one of the parents' lawyers that "he was seeking well over $100,000." That memorandum, however, indicated that the parents were "not making a specific demand." A Utica claims manager recorded in a March 1987 memorandum that he had spoken with the parents' counsel, who had assessed the "full liability value" -6- 6 of the case at $200,000 to $250,000. Another memorandum by defense attorney Roche to Utica memorialized an April 1988 discussion between Roche and another lawyer for the parents; that discussion occurred at the courthouse after a scheduled settlement conference had been canceled. The memorandum stated that the parents' "current demand was $200,000, which does not seem too far out of line." While none of these communications were formal written demands, a factfinder could reasonably conclude from them that a settlement could perhaps have been negotiated at roughly $250,000.  Those memoranda did not, however, compel such a finding; other evidence at trial cast doubt on the feasibility of settlement in the $250,000 range. The plaintiffs made no written demands until much later, and those demands were for a significantly larger amount. The lawyer who allegedly said he sought "well over $100,000" was only on the case a short while, and he did not testify in this trial. His successor, who was not the partner in charge of the case, did testify; he had purportedly made the $200,000 demand. He stated that he could not remember discussing any specific numbers, and he stated that he would never make a demand without putting it in writing. He also testified that, based on his personal evaluation of the case at the time, he would have recommended that his clients settle for "a figure in the $250,000 range." The partner in -7- 7 charge of the parents' case testified that he did not recall giving any lawyer authority to make a specific demand or to settle the case, and he also testified that he was not sure if he would have recommended that his clients accept $500,000 to settle the case. Yet another attorney testified as an expert that demands are always made in writing. Thus, from this evidence, the district judge was amply justified in finding that the parents never authorized a settlement demand in the $200,000 to $500,000 range. Moreover, the conflicting evidence about what was said, and when, and what was meant, justified the district judge's conclusion that First State failed to prove the likelihood of settlement for less than $500,000. That conclusion was reinforced by evidence (and by First State's arguments) that this wrongful death case had, from the start, obvious potential for a major verdict, one well over $500,000, perhaps $1,000,000 or more. That evidence was critical to the district judge's conclusion that Utica was unreasonable in not pursuing an early settlement; that same evidence makes it less likely that the parents and their lawyers would have settled for $250,000 or even $500,000. Our careful review of the entire record convinces us that the district judge did not clearly err in concluding that First State failed to prove that the parents would -8- 8 probably have settled for an amount within the $500,000 primary policy limits. B. Was settlement possible between $500,000 and $1,250,000? ____________________________________________________________ First State also argues that the district judge erred by not addressing whether the case could have settled for an amount over $500,000, but less than the $1,250,000 eventually paid, had Utica acted reasonably. The district judge recognized that question to be relevant, however, framing the dispositive causation question thus: "[I]s it probable, had Utica reasonably pursued a settlement as it should have, that the case would have settled within Utica's $500,000 policy limit and, if not, was the eventual settlement of $1,250,000 larger than what might reasonably have been achieved but for Utica's misfeasance?" First State ___________ Ins. Co. v. Utica Mut. Ins. Co., 870 F. Supp. at 1178. _________ _____________________ Although it is implicit in his judgment that the district judge answered "no" to both prongs of that question, several subsequent statements in the judge's opinion suggest that he did not focus on the second prong. In three separate statements, the judge explained that his judgment was based on his finding that First State had failed to prove that the parents would have settled for $200,000 or an amount within the $500,000 policy limit. See id. at 1178-79. Although the ___ ___ district judge did not expressly find that First State failed to prove a likelihood of settlement in the $500,000 to -9- 9 $1,250,000 range, our review of the record reveals that the contrary conclusion -- that such a settlement was probable -- lacks evidentiary support.  While we can speculate that a settlement at a figure between $500,000 and $1,250,000 may indeed have been likely, First State presented no evidence to that effect. The finding that First State seeks could be based only upon speculation and surmise. The only evidence of settlement discussions in that range was the parents' formal written demand in August 1988 for $1,000,000. That offer, however, was expressly based on the belief that the combined insurance coverage was $1,000,000, as the defendant contractor had erroneously stated in an interrogatory answer. The demand was increased to $15,000,000 several months later when the parents' lawyers learned that the total coverage was actually $15,500,000. No other evidence in the record indicates that a settlement between $500,000 and $1,250,000 would have been acceptable to the parents and their lawyers. What evidence there is points to the opposite conclusion. The parents rejected an offer of $750,000 two days before trial, and rejected offers of $1,000,000 and $1,100,000 during trial, but of course those rejections do not negate the prospect of settlement at like amounts at an earlier point in time. The district judge found, as First State argued, that the -10- 10 $1,250,000 settlement actually negotiated by First State, after Utica had tendered its policy, was reasonable from an insurer's perspective.  It appears to us that the district judge focused his written opinion on the question of the alleged demand for $200,000 and the potential for settlement in the $200,000 to $500,000 range, because that was the thrust of First State's evidentiary presentation. Because there was no evidence that settlement in the $500,000 to $1,250,000 range was probable, the district court did not err in omitting an express finding that First State failed to prove the likelihood of such a settlement. C. Other Arguments ___________________ We find no merit in First State's argument that the district judge erroneously believed that, as a legal matter, the case turned on whether a formal demand for settlement had been made by the parents. The lack of a formal demand was an important factor in the judge's ruling, but the opinion is expressly clear that the issue was whether settlement for a __________ lesser amount was probable, not whether a lower demand was ______ made. See First State Ins. Co. v. Utica Mut. Ins. Co., 870 ___ ____________________ ____________________ F. Supp. at 1178. All of the causes of action advanced by First State require a showing that Utica's action caused harm to First State, i.e., that a real opportunity to settle at a lower -11- 11 amount was wasted due to Utica's unreasonableness or subjective bad faith. Because we affirm the district judge's finding that First State failed to prove that an opportunity for settlement was lost, we need not address any legal distinctions between the several causes of action. First State also claims that the district judge erred in keeping under seal documents that were subpoenaed into court from Prudential Reinsurance, Utica's reinsurer. The documents were withheld from First State because of an assertion of attorney-client privilege. The district judge reviewed the documents in camera and determined that they __ ______ were not relevant, thereby foreclosing First State's challenge to the assertion of privilege.  Having reviewed the record and First State's arguments on this issue, we find that any relevance the documents may have had concerned only the issue of Utica's reasonableness and good faith in pursuing settlement. Because the district judge found that Utica acted unreasonably and in bad faith, First State cannot complain about the sealing of documents relevant to that issue. First State made no proffer, nor has it argued on appeal, that the documents contained evidence probative of the dispositive causation issue, i.e., the likelihood of a settlement at a lower amount. The critical fact lacking in First State's case was the parents' willingness to settle for a lower -12- 12 amount, and it seems unlikely that correspondence between Utica and Prudential Reinsurance would contain evidence on that issue. We conclude that there was no prejudice to First State and thus there is no reversible error in the judge's ruling on the disputed documents. -13- 13 III. III. ____ CONCLUSION CONCLUSION __________ For the foregoing reasons, the judgment is affirmed. Costs to the appellee Utica. ________ -14- 14