Burnes, J.
A jury found for the plaintiffs Cynthia and David Palmi (the “Palmis”) on their breach of contract claim against the defendant Metropolitan Property and Casualty Insurance Company (“Metropolitan”). The court had previously allowed Metropolitan’s motion for summary judgment on the only other claims, those of violations of G.L.c. 93A and c. 176D. Metropolitan moved for a directed verdict after the plaintiffs’ case and at the close of the evidence. It now moves for a judgment notwithstanding the verdict. For the reasons set out in this opinion, this motion is ALLOWED.
BACKGROUND
At trial, the jury heard the following evidence:
On September 11, 1990, Cynthia Palmi was injured when the car she was operating collided with a car owned and operated by Brian Bush (“Bush”). Bush had failed to stop at the stop sign for the street he was on; Ms. Palmi had no stop sign on her street. Bush was insured under a standard Massachusetts Automobile Insurance Policy issued by Metropolitan.
Ms. Palmi engaged Attorney Wayne R. DiCarlo (“Di-Carlo”). DiCarlo sent a letter dated November 1, 1990 to Bush informing him that he represented Ms. Palmi in connection with her personal injury claim. Bush sent the letter to Metropolitan, who received it on November 15, 1990. Metropolitan, by letter dated November 19, 1990, acknowledged DiCarlo’s letter and requested that he forward to it “any and all medicals to date.”
By letter dated November 23, 1990, DiCarlo sent Metropolitan a “(Disting of medical charges reported to me as of this date,” as well as copies of the bills and a wage verification form. He sent more information on November 30, 1990, December 11, 1990, December 17, 1990, and December 21, 1990. On December 7, 1990, Metropolitan sent authorizations to Ms. Palmi’s medical providers and to her employer to verify the information that it had, and was continuing to receive, from DiCarlo.
Lynne Birchett (“Birchett”) was the assigned Metropolitan claim representative. Karen Chartier also worked on the file. Ms. Chartier had conversations, with and took a statement from Ms. Palmi and Metropolitan’s insured, Bush. Upon review of the file, Ms. Chartier learned that Metropolitan’s insured was likely to be 100% at fault in this accident. Once Birchett heard from DiCarlo, she had no further direct contact with Ms. Palmi since she was represented by counsel. During a telephone conversation in late November 1990, Birchett told DiCarlo that the coverage under the policy was $15,000. She asked DiCarlo to provide her with a medical report on Ms. Palmi. She received a copy of Ms. Palmi’s physician’s report in a letter from DiCarlo dated December 11, 1990. The physician opined that Ms. Palmi would continue to be totally disabled until at least March 1991.
On December 17, 1990, Birchett spoke to DiCarlo to confirm that she had received the medical report. DiCarlo was upset that Birchett was not immediately willing to offer to settle for the total amount of the policy. He had hoped that the insurer would pay the policy limit immediately, in view of the Christmas holiday. In order to goad Birchett into action DiCarlo, that same day, sent Birchett a letter totaling the medical expenses to date, confirming that Ms. Palmi would remain totally disabled at least through March 1, 1991, and mentioning Mr. Palmi’s claim for lack of consortium. In this letter, DiCarlo said that the Palmis would settle their claims for the total amount of the policy. This offer, however, would remain open, wrote DiCarlo, only until December 27, 1990, “at which time it shall be withdrawn, unless sooner accepted.” Metropolitan never informed Bush of the offer to settle within the policy limits.
This letter was received in Metropolitan’s office on Thursday, December 20, 1990. Friday was a full work *465 day. Birchett did not work on December 24; she does not remember if the office was closed that day. The office was closed on Christmas. All told, Birchett had three business days to respond to the offer to settle.
Birchett did not respond to DiCarlo’s letter within the time allowed. She did not call DiCarlo to ask for more time. She next reviewed the case on January 31, 1991, when it came up in her diary.
On January 31, 1991, Birchett resolved a conflict in the file concerning the date through which Ms. Palmi would likely be totally disabled. The physician had said she would be disabled at least through March 1; Aetna Casualty, Ms. Palmi’s Personal Injury Protection (“PIP”)[1] carrier, had information that Ms. Palmi had gone back to work on November 9, 1990. On January 31, 1991, the PIP carrier agreed that Ms. Palmi’s physician was correct. Birchett completed her evaluation of the claim, valuing it at $24,098. She deducted $8,000 for PIP payments (which, plaintiffs claim, had not been verified by Metropolitan). Birchett did not consider Mr. Palmi’s claim because Ms. Palmi’s claim alone exceeded the policy limits.
Birchett offered the policy on February 1, 1991. This offer was rejected by DiCarlo because it had not been made within the amount of time he had set in his December 17, 1990, letter.
The Palmis filed suit against Bush in Fitchburg District Court on January 7, 1991. The case was tried on January 22, 1993. The court awarded judgment against Bush, on both of the Palmis’ claims, in the amount of $38,000.47, exclusive of interest. Bush assigned any rights that he had against Metropolitan to the Palmis on March 27, 1997.
DISCUSSION
A claim by an insured against the insurer for failure to settle is essentially a negligence claim. See Hartford Cos. Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 120 (1994). The test is whether no reasonable insurer would have failed to settle the case within the policy limits. Id. at 121. The insured must prove that the plaintiff in the underlying action would have settled the claim within the policy limits and that, assuming the insurer’s unlimited exposure (viewed from the point of view of the insured), no reasonable insurer would have refused the settlement offer or would have refused to respond to the offer. Id. The test is not significantly different from the traditional standard, whether the insurer exercised a good faith judgment. Id. at 118. A jury can also find liability based upon bad faith in the settlement of a claim against an insured shown by evidence of what the practice in the industry was in similar circumstances and expert testimony that the insurer violated sound claims practices in not resolving a coverage question in favor of its insured. DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 98-99 (1983).[2]
The standard of review for a judgment notwithstanding the verdict is the same as that for a directed verdict. See Service Publications, Inc. v. Goverman, 396 Mass. 567, 571 (1986). The facts in the record must be reviewed in a light most favorable to the plaintiff. See MacCormack v. Boston Edison Co., 423 Mass. 652, 659 (1996). A plaintiff, however, may not recover when any essential element is left to conjecture, surmise or hypothesis. White Spot Construction Co. v. Jet Spray Cooler, Inc., 344 Mass. 632, 635 (1962).
In the light most favorable to plaintiffs, the jury could have found that Metropolitan essentially believed that it would likely end up paying the policy limit and took a “we’ll-get-to-this-when-we-get-to-it” approach. If Metropolitan would have to pay the policy limit anyway, from its perspective the demand letter would have been irrelevant. Trial evidence supports this: the case appears to have been put on hold until it came up in Ms. Birchett’s diary. She needed only the diary day plus one more to complete her evaluation of the claim. Metropolitan confirmed that the claim exceeded policy limits, and decided to pay the $15,000 limit. The salient question here is whether ordinary jurors can decide that this insurance contract was breached on the evidence offered or whether they can do so only with the aid of expert testimony or other testimony of industry practice.
This court shall grant Metropolitan’s motion for judgment notwithstanding the verdict on the ground that the Palmis failed to present evidence — from an expert, other professional or otherwise — to show what a reasonable insurer under the circumstances would do. “The test is not whether a reasonable insurer might have settled the case within the policy limits, but rather whether no reasonable insurer would have failed to settle the case within the policy limits [or would have refused to respond to the offer].” Hartford Cas. Ins. Co., 417 Mass. at 121. Findings of fact on technical matters beyond the scope of ordinary experience are unwarranted in the absence of expert testimony to support such findings. See Enrich v. Windmere Corp., 416 Mass. 83, 88-89 (1993) (defect in electric fan could not be inferred in absence of expert testimony); Colucci v. Rosen. Goldberg, Slavet, Levenson & Wekstein, 25 Mass.App.Ct. 107, 111 (1987) (expert needed to establish standard of care in legal malpractice action); Paul J. Liacos, Massachusetts Evidence §7.6.2 (7th ed. 1999). What a reasonable insurer would or would not do is not something that the ordinary lay person knows. The analogous standard is that which tests professional negligence. See e.g. Fishman v. Brooks, 396 Mass. 643, 647 (1986) (usually need expert to show attorney was negligent). Only where the professional negligence is so gross as to be obvious to a lay person may the case be made without expert testimony. See Pongonis v. Saab, 396 Mass. 1005, 1005 (1985) (“expert testimony is not essential where the claimed legal malpractice is so *466 gross and obvious that a laymen can rely on their common knowledge to recognize or infer negligence . . ."(emphasis supplied)).
The plaintiffs rely on Lipman v. Lustig, 346 Mass. 182, 184 (1963), to support their proposition that no expert testimony is needed to show that no reasonable insurer would have failed to settle the case within the policy limits or would have refused to respond to the offer. That case is inapposite to this situation. In Lipman, 346 Mass. at 184, a dentist was found liable, without the aid of expert testimony, for dropping a needle-like object into his patient’s throat and telling the patient not to worry about it. That case, unlike the present, is one of gross and obvious negligence. The Palmis’ case — whether the insurer’s failure to respond to the demand letter on three days notice, when it could have done so but did not — is not obviously negligent in the way that telling someone not to worry about a needle-like object in one’s stomach is obviously negligent.[3] The jury needed evidence of the standard in the industry and it did not have any.
The plaintiffs, here, must present evidence from an expert on industry practice, or at the very least a professional to testify as to that practice, to explain to the jury what a reasonable insurer would do and to show that no reasonable insurer would have failed to settle the case within the policy limits by the time allotted in the demand letter. See Hartford Cas. Ins. Co., 417 Mass. at 120; see also First State Ins. Co. v. Utica Mut Ins. Co., 870 F.Sup. 1168, 1177 n.22 (D.Mass. 1994) (noting testimony of expert witness as to insurance industry practice).[4] For example, in DiMarzo, 389 Mass. at 97-99, to show that the insurer acted in bad faith by failing to settle, the plaintiff introduced into evidence a notice from the Massachusetts Automobile Rating and Accident Prevention Bureau, expert testimony as to sound claim practices, and the opinion of the Commissioner of Insurance as to industry practice. Id. In this case, the Palmis introduced no evidence through an expert or otherwise from which the jury could infer that no reasonable insurer would have failed to settle the case or respond to a demand letter within the time frame set forth in such letter. Because the jury did not have any evidence of the standard in the industry, Metropolitan’s motion for judgment notwithstanding the verdict is allowed.
ORDER
For the reasons stated in this opinion, Metropolitan’s motion for judgment notwithstanding the verdict is allowed.

The PIP carrier would be responsible for paying Ms. Palmi’s medical bills and 75% of her lost wages up to the $8,000 limit.

An insurer may also be liable, even absent a showing that it failed to act in an objectively reasonable manner, if its decision was motivated by subjective bad faith. Hartford Cas. Ins. Co., 417 Mass. at 123. That issue, however, was not before the court — there was no claim that Metropolitan was liable under this theory.

Metropolitan argues that the time constraints in the demand letter cannot, as a matter of law, form the basis for a claim of breach of contract because they were unreasonable. The issue is not whether the demand was unreasonable, but whether failure to respond to the demand was unreasonable. As to that, there was no expert or other evidence regarding industry practices.

This court is not saying that an expert is always needed to explain what a reasonable insurer would do. For instance, this court could opine that much like in the professional negligence cases an insurer could commit an act so gross as to be obvious to a lay person. Simply put, this is not such a case.