## Hanover Insurance Company *vs.* Catherine Golden & another.[1]

Middlesex. January 8, 2002. - April 26, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Insurance,* Motor vehicle insurance, Insurer's obligation to defend, Construction of policy. *Contract,* Insurance. *Practice, Civil,* Declaratory proceeding, Attorney's fees.

This court concluded that, if an action for declaratory relief concerning an insurer's duty to defend under a liability insurance policy is resolved in favor of the insured, then the insured is entitled to recover attorney's fees without regard to whether the insurer committed a breach of the terms of the policy. [586-588] Sosman, J., with whom Cordy, J., joined, dissenting.

Civil action commenced in the Superior Court Department on August 17, 1988.

The case was heard by *Isaac Borenstein,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John D. Boyle (Patrick H. Millina* with him) for the plaintiff.

*Andrew Aloisi (Liam J. Vesely* with him) for the defendants.

Spina, J. We granted further appellate review in this case to consider the question of an insurer's liability to its insureds for reasonable attorney's fees incurred to establish the insurer's duty to defend, where the insurer had neither failed nor refused to defend the insured. See *Hanover Ins. Co.* v. *Golden,* 51 Mass. App. Ct. 465 (2001). We agree with the Appeals Court and hold that, if an action for declaratory relief concerning an insurer's duty to defend under a liability insurance policy is resolved in favor of the insured, then the insured is entitled to recover attorney's fees without regard to whether the insurer committed a breach of the terms of the policy.

1. *Background.* On November 14, 1985, a motor vehicle

[1]Martin Golden.

owned by Martin Golden and operated by Catherine Golden struck and injured a pedestrian, Carol Brisette. The vehicle was insured by Hanover. The Goldens notified Hanover of the accident in a timely manner and cooperated in the defense, as required under their policy. The third edition of the Massachusetts Standard Automobile Liability Policy applied at the time.

Brisette filed suit against the Goldens in 1986, seeking damages of $500,000 for herself and $100,000 for loss of consortium for her minor child. The Goldens' policy provided bodily injury coverage limits of $100,000 per person and $300,000 per accident. Hanover appeared and defended the Goldens. On June 5, 1986, Hanover notified the Goldens that, because Brisette was seeking damages in excess of the policy limits, they could employ additional counsel at their expense to assist in the defense. The Goldens retained counsel for that purpose. On August 27, 1986, Hanover offered the policy limits to settle Brissette's claim. The offer was rejected.

In August, 1988, after more than two years of discovery, Hanover commenced this action seeking a declaration that its obligations to defend would terminate on payment of the policy limits. The action was based on the provision in the policy that stated: "Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy." The Goldens retained counsel to defend against Hanover's action. On cross motions for summary judgment a judge in the Superior Court ordered judgment for the Goldens on Hanover's complaint, and denied Hanover's motion for summary judgment on the Goldens' counterclaim. The judgment stated that Hanover's duty to defend would not terminate on payment of the policy limits. The judge ordered, pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974), that the declaratory judgment would enter as a final judgment. On June 5, 1989, Hanover timely filed a notice of appeal. It withdrew its appeal on July 19, 1989, for reasons that do not appear in the record. Hanover continued its representation of the Goldens in Brisette's case, without interruption. That case eventually settled after Hanover paid the policy limits and the Goldens contributed $12,000.

Trial proceeded on the Goldens' counterclaim in February,

1997, before a different judge, sitting without a jury. The judge found that Hanover had not violated c. 93A.[2] He did not rule that the Goldens were entitled to attorney's fees for their defense of Hanover's action for declaratory relief as Hanover had done nothing that constituted a breach of the terms of the policy. The judge noted that Hanover's representation of the Goldens in the underlying action was uninterrupted, even after it filed its action for declaratory relief.

2. *Discussion.* Hanover argues that our decisions in *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93 (1997), and *Rubenstein* v. *Royal Ins. Co.*, 429 Mass. 355 (1999), establish that an insured may recover attorney's fees in an action for declaratory relief concerning an insurer's duty to defend only if the insured prevails in that action *and* if the insurer is shown to have done something that constitutes a breach of the insurance policy, such as a failure or refusal to defend. Hanover further argues that, because it did nothing that constituted a breach of its insurance policy, the Goldens may not recover their attorney's fees.

Although the *Gamache* and *Rubenstein* cases each involved circumstances that amounted to a breach of the terms of the policy, the principle we articulated does not require the insured to prove the existence of a breach. In *Preferred Mut. Ins. Co.* v. *Gamache, supra* at 98, we held "that an insured . . . is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy." In *Rubenstein* v. *Royal Ins. Co., supra* at 359, we expressly stated that the holding in *Gamache* was not qualified by a refusal to defend.

We have rejected the approach taken by courts that hold that an insured seeking attorney's fees for establishing the insurer's duty to defend must show that the insurer "acted in bad faith or fraudulently, or has been stubbornly litigious," *Gamache, supra* at 96, or committed a breach of the terms of the insurance

---

[2]We are satisfied, as was the Appeals Court, see *Hanover Ins. Co.* v. *Golden*, 51 Mass. App. Ct. 465, 467 (2001), that the judge's findings and rulings on the c. 93A claim were correct. The Goldens did not seek further appellate review of the decision of the Appeals Court.

policy. See *Rubenstein, supra* at 358-359 & n.3.[3] It is immaterial whether the insurer proceeds in good faith or in bad faith to avoid the duty to defend under a liability insurance policy because "[t]o impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." *Id.* at 360, quoting *Hayseeds, Inc.* v. *State Farm Fire & Cas.,* 177 W. Va. 323, 329 (1986). "The entitlement of an insured to attorneys' fees and costs incurred in establishing contested coverage depends exclusively on whether that coverage is ultimately determined to exist. It does not depend on whether the denial of coverage by the insurer was reasonable or unreasonable, justified or unjustified, a close question of fact or a matter not even subject to legitimate dispute. *The focus is exclusively on the bottom line*" (emphasis added). *Rubenstein, supra,* quoting *Commercial Union Ins. Co.* v. *Porter Hayden Co.,* 116 Md. App. 605, 713 (1997).

The existence of a breach of the terms of the policy is irrelevant because "a special relationship exists between the insured and the insurer under a liability insurance policy, [wherein] . . . insureds obtain liability insurance to avoid the prospect of being burdened by significant legal expenses." *Rubenstein, supra* at 358, citing R. Keeton & A. Widiss, Insurance Law § 9.5, at 1056-1057 (1988), and 7C J.A. Appleman, Insurance Law and Practice § 4691, at 283 (rev. ed. 1979). "The intent of an insured in acquiring liability insurance is to transfer to the insurer the responsibility for defending the insured against any claim which may fall within the coverage of the policy." *Rubenstein, supra* at 358. In this respect, liability insurance is " 'litigation insurance' as well." *Id.,* quoting *Brohawn* v. *Transamerica Ins. Co.,* 276 Md. 396, 409-410 (1975). Thus, as the Appeals Court noted, "[i]t should not matter whether (as in *Gamache*) the insurer announces withdrawal from the third-party action and sues for a declaration, or (as in the present case) brings a declaratory action and provisionally

---

[3]Hanover also argues that attorney's fees may not be awarded in the case absent express statutory authority. It did not make this argument in the trial court or in the Appeals Court. Nevertheless, we rejected this argument in *Preferred Mut. Ins. Co.* v. *Gamache,* 426 Mass. 93, 96-97 (1997).

maintains defense of the third-party action pending instruction by the declaration. In either case the insured deserves reimbursement for his reasonable outlay 'in successfully establishing the insurer's duty to defend under the policy.' " *Hanover Ins. Co.* v. *Golden, supra* at 468, quoting *Rubenstein, supra* at 359.

The Goldens were forced to defend Hanover's action and incur legal fees to establish Hanover's duty to defend. If they failed to defend that action, they would have risked being defaulted and they would have incurred attorney's fees they otherwise would not have incurred for the defense of the Brissette matter. Instead, they were successful in establishing that Hanover's duty to defend extended beyond its payment of the policy limits. They are entitled to recover their attorney's fees for that effort.

We are not persuaded by Hanover's suggestion that our holding will provide incentive to insurers to abandon the defense of an insured pending the outcome of an action for declaratory relief. Our holding makes insurers accountable for attorney's fees in cases where a court determines that abandonment is, or would be, wrongful. There is no incentive for insurers to abandon the defense or to seek abandonment where they have no reasonable likelihood of success, because they will be ordered to reimburse insureds their cost of establishing the insurer's duty to defend, as well as the cost of defending the underlying action. "An insurer must tread cautiously regarding its duty to defend an insured against third-party actions in view of the expansive interpretation given to that duty." *Rubenstein* v. *Royal Ins. Co., supra* at 360 n.4. Although a showing of bad faith is not required for an award of attorney's fees under our holding in this case, evidence of a bad faith abandonment may provide the basis for other forms of relief under G. L. c. 93A or other law.[4]

The judgment on count V of the Goldens' counterclaim is reversed. The case is remanded to the Superior Court to

---

[4]The dissent suggests that the result here is inconsistent with the encouragement we gave to insurers in *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.,* 406 Mass. 7, 15-16 (1989), to pursue an action for declaratory relief to settle quickly and efficiently the question of any duty to defend. *Post* at 589-590. The issue of attorney's fees was not raised in that case, and we did not suggest that an insurer could avoid attorney's fees in such litigation even if it

determine the reasonable amount of attorney's fees and costs incurred by the Goldens in defending Hanover's action for declaratory relief, and for entry of judgment in such amount.

*So ordered.*

SOSMAN, J. (dissenting, with whom Cordy, J., joins). In *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15-16 (1989), this court recommended that insurers who believed they had no duty to defend an insured should avail themselves of the option of bringing an action for declaratory judgment, because "[t]he existence of the duty to defend can be established quickly and efficiently in such an action when there is a question as to the applicability of an insurance policy." There, the insurer had breached its duty to defend, but was found not to have violated G. L. c. 93A in doing so because its interpretation of the policy, although ultimately found to be incorrect, was reasonable and in good faith. Thus, the court's recommendation that an insurer utilize a declaratory judgment action to determine the existence of a duty to defend was, in context, an admonition that the insurer should obtain such a declaration before taking action on its unilateral opinion that it had no duty to defend.

The insurer in the present case followed that advice to the letter. Despite a good faith basis for believing that its payment of the policy limit would relieve it of any ongoing obligation to provide a defense to the Goldens in the underlying tort action,[1] Hanover Insurance Company (Hanover) maintained that defense for its insureds and went to court to obtain a ruling on the issue. At no time did it breach its contract with its insureds. At no time did it take an unreasonable position in any litigation or act

---

did not prevail. We only intimated that pursuing an action for declaratory relief might be the prudent course where liability looms under G. L. c. 93A.

[1]Hanover had in fact recently prevailed on another declaratory judgment action raising the identical issue. It was not until four years later that the Appeals Court first announced a contrary interpretation of the policy language. *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154 (1992). The Appeals Court noted that the issue had been "the subject of numerous Superior Court decisions, reaching inconsistent results." *Id.* at 155.

in bad faith. It merely took the recommended precaution of obtaining a court declaration on the issue of its duty to defend and provided its insureds with a defense pending the outcome. See *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co., supra.*

Today's opinion tells Hanover that, for having followed this court's recommendation, it is in no better position than it would have been if it had flouted that recommendation. Relying on dicta in *Preferred Mut. Ins. Co.* v. *Gamache,* 426 Mass. 93 (1997) (*Gamache*), and *Rubenstein* v. *Royal Ins. Co.,* 429 Mass. 355 (1999) (*Rubenstein*), and ignoring the fact that both cases involved insurers who had failed and refused to provide their insureds any defense (and had thus breached the underlying insurance contracts), the court today expands *Gamache* and *Rubenstein* to insurers who have not, at any point, committed any breach of contract. *Gamache* and *Rubenstein,* already a departure from the "American rule" on the subject of attorney's fees, and already a departure from the many jurisdictions that require a showing of bad faith or vexatious litigation on the part of the insurer as a predicate to a fee award,[2] should not be expanded further to require payment of attorney's fees in the absence of any breach by the insurer.

Both *Gamache* and *Rubenstein* contain repeated references to the fact of an underlying breach as part of the rationale justifying a departure from the American rule. Rejecting the position that attorney's fees can only be awarded if the insurer acts in bad faith, the court stated that "[t]he better reasoned decisions allow an insured . . . to recover reasonable attorney's fees and expenses *where the insurer refuses to defend,* and its obligation to do so is subsequently established" (emphasis added). *Gamache, supra* at 97. The four cited examples of those "better reasoned decisions" include three that were, as in *Gamache* itself, predicated on the insurer's breach of the duty to defend. See *id.,* citing *Nolt* v. *United States Fid. & Guar. Co.,* 329 Md.

---

[2]See *Preferred Mut. Ins. Co.* v. *Gamache,* 426 Mass. 93, 96 (1997), and cases cited; *New Hampshire Ins. Co.* v. *Christy,* 200 N.W.2d 834, 845 (Iowa 1972); *International Ins. Co.* v. *Rollprint Packaging Prods., Inc.,* 312 Ill. App. 3d 998, 1016 (2000). See also *Maine Mut. Fire Ins. Co.* v. *Gervais,* 745 A.2d 360, 363 (Me. 1999) ("award of attorney fees is not appropriate if the law is unsettled with respect to a duty to defend a particular action").

52, 66-67 (1993) (insurer refused to defend, whereupon insured brought successful declaratory judgment action; fee award justified on ground that insurer effectively "authorized the expenditure by its failure to defend" or on ground that fees for insured's declaratory judgment action were "part of the damages sustained by the insured by [the insurer's] wrongful breach of the contract"); *Sykes* v. *Midwestern Indem. Co.*, 38 Ohio Misc. 64, 69-70 (1973) (same; attorney's fees in declaratory judgment action are "an element of damages" from breach); *Aetna Cas. & Sur. Co.* v. *Pitrolo*, 176 W. Va. 190, 194-195 (1986) (same; "where an insurer has violated its contractual obligation to defend its insured, the insured should be fully compensated for all expenses incurred as a result of the insurer's breach of contract, including those expenses incurred in a declaratory judgment action").[3]

More such language appears in *Rubenstein*. Rejecting the notion that a fee award should hinge on which party commenced the declaratory judgment action, the court stated that fees should be awarded to the insured "whenever the insured establishes that the insurer *violated its duty to defend*" (emphasis added). *Rubenstein, supra* at 358. Similarly, the court rejected the argument that liability policies should be distinguished from homeowner policies for purposes of a fee award: "The position advanced by the defendant would enable an insurer *who wrongfully refused to defend* to deprive its insured of the principal benefit of the contractual bargain, and for which the insured paid premiums. Even if the insured were *eventually* compensated for its defense of the third party action, it would remain permanently uncompensated for the costs associated with the declaratory judgment action it was forced to initiate *because of the insurer's violation of its duty to defend*" (emphasis added). *Id.* at 358-359. Reiterating that a showing of bad faith is not a prerequisite to an award of fees, *Rubenstein* quotes from another jurisdiction: "Whether an insurer's refusal to defend was in

---

[3]The remaining example, *Hegler* v. *Gulf Ins. Co.*, 270 S.C. 548, 551 (1978), inexplicably pronounced that the insurer's bringing a declaratory judgment action "amounted to a wrongful breach of its contractual obligation to defend." We have never held that the mere filing of a declaratory judgment action is tantamount to a breach, nor does today's opinion rely on such a dubious proposition.

good or bad faith is largely irrelevant *once it has been established that the insurer breached its contract with its insured*" (emphasis added). *Id.* at 359-360, quoting *Aetna Cas. & Sur. Co.* v. *Pitrolo, supra.* Finally, *Rubenstein* concludes its discussion of the attorney's fees issue with yet another express reference to the insurer's breach: "*Because the trustees established that the defendant violated its duty to defend them* in the damages action, they are entitled to an award of the reasonable attorney's fees and expenses incurred in the declaratory judgment action" (emphasis added). *Rubenstein, supra* at 360.

These repeated references to an underlying breach, which pervade both *Gamache* and *Rubenstein*, should not be dismissed as mere dicta. Other jurisdictions examining this precise issue have concluded that the insurer's actual breach of the contract is indeed a prerequisite to an award of fees incurred in the litigation establishing the insurer's obligation. "The insured is not entitled to recover attorney fees incurred in maintaining or defending a declaratory action to determine the question of coverage unless the insurer has breached the insurance contract in some respect — usually by wrongfully refusing to defend the insured." *American Standard Ins. Co.* v. *Dang Van Le*, 551 N.W.2d 923, 927 (Minn. 1996) (reversing fee award where insurer defended under reservation of rights and brought unsuccessful declaratory judgment action). "Implicit in all the cases dealing with the rights of an insured to recover attorney fees in a declaratory judgment action is that a *breach of contract* must occur under the policy. As a precursor to the award of attorney fees, the insurance company must breach the contract by wrongfully or unjustifiably refusing to defend the insureds in a tort action under the policy" (emphasis in original). *Allstate Ins. Co.* v. *Vasquez*, 74 Ohio App. 3d 564, 567 (1991) (affirming denial of fees where insurer provided defense while pursuing declaratory judgment action that was ultimately resolved in favor of insured). See *American Motorists Ins. Co.* v. *Squibb*, 95 Misc. 2d 222, 225 (N.Y. Sup. Ct. 1978) (denying fees in declaratory judgment action where insurer defended insured under reservation of rights, noting that in all cases awarding fees "the insurer denied coverage and refused to defend the insured"). See also

*Great Northern Ins. Co.* v. *Dayco Corp.*, 637 F. Supp. 765, 788 (S.D.N.Y. 1986) (summarizing New York law, concluding that "the right to recover attorneys' fees incurred in defending a declaratory judgment action brought by the insurer is limited to situations where the insurer breached its duty to defend").

Justifying its decision to award fees even in the absence of breach, the court points to language in *Rubenstein* to the effect that legal fees should be recoverable because people purchase liability insurance "to avoid the prospect of being burdened by significant legal expenses," *Rubenstein, supra* at 358, and that liability insurance should therefore function as " 'litigation insurance' as well," *id.*, quoting *Brohawn* v. *Transamerica Ins. Co.*, 276 Md. 396, 409-410 (1975). Thus, the argument goes, because bringing or defending a declaratory judgment action costs legal fees, and insurance is purchased to avoid paying legal fees, all such fees are owed regardless of whether there has been an underlying breach. Of course, notwithstanding such references, *Rubenstein* in fact concluded that the insureds had to pay the vast bulk of their own attorney's fees in the declaratory judgment action. Much of the coverage dispute in *Rubenstein* centered on the fact that the insureds had been unable to locate the policies issued to them, and the insureds thus had to prove the existence and terms of missing policies in that coverage litigation. Notwithstanding any view that the insureds, who were ultimately successful in proving the existence and terms of their policies, should have the benefit of "litigation insurance" and be allowed "to avoid the prospect of being burdened by significant legal expenses," *id.* at 358, this court decided that the insureds were *not* entitled to attorney's fees incurred "in establishing the existence, terms, and conditions of the missing insurance policies issued by the defendant." *Id.* at 361. The precise reason for this limitation was not articulated,[4] but the "litigation insurance" envisioned by *Rubenstein* is apparently not as all encompassing as the court now suggests.

[4]Presumably, there was some sense that it was simply unfair to require the insurance company to pay when it was in no way at fault for the loss of the policy, although that limitation runs counter to the court's sweeping declaration that the insurer's good faith is immaterial and that the "only considerations relevant" in such a fee award are the insured's purchase of a policy covering the underlying claim and the insured's prevailing in the

. Nor should it be. Nothing in a standard automobile or liability policy promises an insured that there will never be good faith disputes or good faith litigation over the application of the policy to particular cases, and nothing in the policy suggests that an insured will never incur any legal expenses. Indeed, in the present case, based on Hanover's notice to the Goldens advising them that their potential exposure exceeded the policy limits and that they might want to consider hiring additional counsel, the Goldens proceeded forthwith (within less than one week of that notice) to hire their own lawyer, at their own expense, to protect their interests in the underlying litigation. They did not operate under some mistaken impression that they would never be called on to incur legal fees in connection with claims covered by their automobile policy, and they did not hesitate to incur such fees on realizing that the claim against them might be far more than the policy limit. Those fees are not recoverable, notwithstanding the Goldens' ostensible purchase of "litigation insurance," and the Goldens do not even make such a claim.

The "litigation insurance" one purchases in an automobile or liability policy is insurance for the costs of the defense in the underlying claim,[5] and does not reach all other matters merely because they are related to the policy in some fashion. Of course, in the case of a breach of the duty to defend, the insured has had to incur the precise type of legal fees that the contract was intended to avoid (i.e., fees for defense of the underlying suit), and an award for legal fees incurred in the declaratory judgment action that corrected that breach is, while not technically within the policy, at least an understandable extension of it. It is one thing to include compensation for such fees when they have been incurred as part and parcel of an ongoing breach.

declaratory judgment action. *Rubenstein* v. *Royal Ins. Co.*, 429 Mass. 355, 360 (1999).

[5]In its entirety, the then-standard policy provision concerning Hanover's duty to defend provided as follows: "We have the right and duty to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We will defend the lawsuit even if it is without merit. We have the right to settle any claim or lawsuit as we see fit. Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy. If any person covered under this policy settles a claim without our consent we will not be bound by that settlement."

It is another thing to suggest that, even in the absence of a breach, the insurer must pay all legal fees incurred by both sides in resolving a good faith disagreement about the scope of the insurer's duty to defend.

To the extent that the court's decision today is driven by a desire to provide insureds with "peace of mind," *Rubenstein*, *supra* at 359, quoting *Miller* v. *Fluharty*, 201 W. Va. 685, 694 (1997), it overlooks the serious disincentives the court has now inserted into an insurer's decision whether to provide a defense under a reservation of rights and commence a declaratory judgment action. Those disincentives will make it less beneficial for insurers to provide an interim defense, and thereby increase the likelihood that insurers will refuse to defend and will simply await the insured's declaratory judgment action (if any). Where there is a good faith and reasonable basis for an insurer to believe that it has no obligation to defend,[6] the insurer must weigh the potential benefits, costs, and risks of declining to provide a defense against the potential benefits, costs, and risks of providing a defense and commencing a declaratory judgment action. Today's decision, imposing liability for fees without regard to whether the insurer did or did not provide a defense while seeking prompt court resolution of its duty to do so, takes away an important incentive to provide such a provisional defense. By comparison, if we follow other jurisdictions and make the insurer's breach a prerequisite for recovery of fees, we leave in place an incentive that will continue to encourage insurers to provide a defense and seek resolution by way of declaratory judgment, i.e., by continuing to provide a defense, the insurer will be protected from having to pay additional at-

---

[6]We are dealing here only with cases where the insurer's belief is held both reasonably and in good faith. Bad faith, or unreasonable conduct, implicates G. L. c. 93A, which imposes far more serious penalties than a mere award of attorney's fees. An insurer that unreasonably refuses to defend its insured, or that commences bad faith or vexatious litigation against its insured, faces the prospect of paying three times the insured's attorney's fees in the underlying action and in the declaratory judgment action, plus the attorney's fees that the insured incurs in pursuing the G. L. c. 93A claim. G. L. c. 93A, § 9. A refusal to defend that is reasonable, although ultimately shown to be erroneous, does not give rise to liability under G. L. c. 93A. See *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 754 (1993); *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 14-15 (1989).

torney's fees if its good faith assessment turns out to be erroneous. Today's decision diminishes the potential benefits of providing that interim defense, and thereby increases the risk that insureds will be abandoned whenever the insurer has a good faith belief that it has no duty to defend.

If the court's objective in today's opinion is to protect insureds' peace of mind, surely that objective is better served by encouraging insurers to maintain their provision of a defense while seeking resolution of the good faith dispute concerning their duty to defend by way of a declaratory judgment action, rather than increasing the likelihood that insurers will unilaterally decline or discontinue the insureds' defense. Whenever the insured must suddenly defend himself in the underlying litigation *and* cover the costs of a declaratory judgment action (with no reimbursement for any of the fees incurred in either action unless and until the insured wins the declaratory judgment action), the insured's "peace of mind" has been more profoundly disturbed than it would have been from having to pay the declaratory judgment fees alone. Of course, the combined burdens of having to come up with fees for both actions at once will effectively prevent some insureds from even pursuing or defending a declaratory judgment action, and some insureds with meritorious claims against their breaching insurers will be unable to pursue those claims. An insured who is at least not simultaneously having to pay for his own defense in the underlying action is more likely to be able to go forward with the declaratory judgment action in the first place. From the insured's perspective in a dispute with its insurer, the highest priority is to maintain the insurer's provision of the underlying defense. In a desire to award attorney's fees compensation in all cases after the fact, today's decision jeopardizes that higher priority.

In my view, we should not need to be weighing such factors at all. We should be interpreting the insurance contract according to its plain terms and in accordance with our normal rules. Both the contract and our normal rules are unambiguous on these issues, and, in an industry as highly regulated as the insurance industry, it is particularly inappropriate for us to be inserting new contract terms based on our own (or on commentators') notions of public policy. *Gamache* and *Rubenstein*

represent something of a departure from those principles in an attempt to give relief to insureds who are victims of an insurer's breach of contract. That departure at least responds to claims by persons who have been injured by an insurer's wrongful refusal to defend them. We should not extend *Gamache* and *Rubenstein* to insureds who have never suffered any breach, nor should we erect disincentives that will undermine the recommendation we gave insurers in *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 15-16 (1989). Undermining that advice will, in the long run, do greater harm to more insureds. I therefore respectfully dissent.