UNITED STATES FIRE INSURANCE COMPANY *vs.* WORCESTER INSURANCE COMPANY.

No. 03-P-1170.

Middlesex. May 14, 2004. - January 20, 2005.

Present: PERRETTA, BERRY, & TRAINOR, JJ.

*Insurance,* Defense of proceedings against insured, Construction of policy. *Practice, Civil,* Attorney's fees.

This court concluded that the plaintiff, an excess insurance carrier for a certain tortfeasor, rather than the defendant, the primary insurer, had the duty to defend the insured on a partially settled claim, where the primary insurer had exhausted its policy limits, where there was no record support for the allegation that it had squandered its policy limits without obtaining adequate protection for the insured, and where there was no other collectible insurance available to the insured. [801-805]

CIVIL ACTION commenced in the Superior Court Department on July 14, 1999.

The case was heard by *Nonnie S. Burnes,* J., on motions for summary judgment, and a motion to reconsider and to vacate the judgment was considered by her.

*Andre A. Sansoucy* for the plaintiff.

*Brian A. O'Connell* for the defendant.

PERRETTA, J. This appeal brings before us the question who had the duty to defend Youngblood Plumbing & Heating Company (Youngblood) on a partially settled claim — Worcester Insurance Company (Worcester), the primary insurer, or United States Fire Insurance Company (US Fire), the excess carrier. On cross motions for summary judgment, Worcester argued that after it had exhausted its policy limits in obtaining settlements of the claims against Youngblood, five full and one partial, it became US Fire's duty to represent Youngblood on the remainder of the partially settled claim. US Fire argued in

the trial court and continues to do so on appeal that based on the language of its policy and the law to be applied in the circumstances presented, the duty to defend remained with Worcester. We affirm the judgment in Worcester's favor.

1. *The undisputed facts.* Although somewhat lengthy in the retelling, the undisputed facts are not complicated. Due to work negligently performed by Youngblood at the Woburn Nursing Center (the Center), there was an explosion and fire. Various claims, six in all, for bodily injury and property damages were then brought against Youngblood. Youngblood owned a "Contractor's Business Owners Insurance Policy" issued by Worcester with liability limits in the amount of $1,000,000. US Fire provided Youngblood with a commercial umbrella policy with excess liability limits in the amount of $5,000,000. In tendering a defense to the six claims, Worcester put US Fire on notice that the claims against Youngblood were likely to exceed the $1,000,000 policy limit of the primary insurance.

After an investigation, and due to some irregularities in Youngblood's application for insurance, Worcester brought an action against Youngblood and the six claimants in the underlying tort actions. Pursuant to that action, and as of July 14, 1994, Worcester had negotiated full settlements on five of the claims for a total amount of $150,500. The sixth claim was that of St. Paul Fire and Marine Insurance Company (St. Paul). St. Paul had paid the center $2,900,000 pursuant to an arbitration award on the nursing center's property damage claim. Worcester negotiated a settlement of St. Paul's subrogation claim, and on July 17, 1994, received a partial and limited release in consideration of a payment of $59,500 as well as a previous payment in the amount of $790,000, for a total amount of $849,500. With those payments, Worcester exhausted the limits of its policy — that is, $1,000,000, leaving Youngblood exposed to further litigation with St. Paul on the remaining amount of its claim, $2,050,500. Youngblood knew of these negotiations and agreed to all six settlements, and Worcester dismissed its action against the six claimants.

Its policy limit exhausted, Worcester notified Youngblood and US Fire that it was withdrawing its defense of Youngblood against St. Paul. Although US Fire then took up Youngblood's

defense, it did so under protest and made repeated requests to Worcester that it resume its defense of Youngblood, all to no avail. US Fire settled what remained of St. Paul's claim and then brought this action against Worcester seeking a declaration that it was entitled to recoup the costs of its defense in so doing.

After the judge ruled on the cross motions for summary judgment, US Fire brought a motion for reconsideration as well as a motion to vacate the judgment pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). These motions were based on allegations that Worcester had made misrepresentations of fact on the issue of whether it had exhausted its policy limits in settling its claims against Youngblood.[1] The judge denied both motions.

2. *The arguments on appeal.* US Fire does not dispute that the six claims against Youngblood involved personal injuries and property damage which were covered by both the primary and excess insurance policies or that Worcester paid $1,000,000, its policy limit, in exchange for five settlements and one limited release from the six claimants. Rather, US Fire argues that because the settlements reached by Worcester were not good faith settlements and included payment of counsel fees to it, Worcester's policy limits were not exhausted, and therefore, Worcester was not discharged from its duty to defend Youngblood.

3. *Discussion.* We take up first US Fire's argument that the "Other Insurance" condition, Condition H of its policy, made Worcester responsible for all the costs of Youngblood's defense. That condition reads in full:

> "Other Insurance. If there is any other collectible insurance available to the 'Insured' (whether such insurance is stated to be primary, contributing, excess or contingent) that covers a loss that is also covered by this policy, the insurance provided by this policy will apply in excess of, and shall not contribute with, such insurance. This Condition H does not apply to any insurance policy purchased

---

[1] US Fire alleged that because Worcester had paid an aggregate amount of $3,000 for attorney's fees in settling various claims against Youngblood, it had not, in fact, exhausted its policy limits in settling the claims against Youngblood. Worcester presented documentary evidence to the contrary.

specifically (and which is so specified in such insurance policy) to apply in excess of this policy."

US Fire argues that because Condition H of its policy provides that it has no obligation to contribute "if there is other insurance, 'whether such insurance is stated to be primary, excess, or contingent,' " it is a so-called "super escape clause." It then contends that Section III H 1, the "Other Insurance" condition set out in Worcester's policy, made it an excess insurer. That condition reads:

> "If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance."

As support for its argument, US Fire cites *United States Fid. & Guar. Co.* v. *Hanover Ins. Co.*, 417 Mass. 651, 654-656 (1994).

Assuming for purposes of US Fire's argument that Worcester's "other insurance" clause made its coverage excess and subject to US Fire's "super escape clause," *id.* at 656-657, the fact remains that Condition H of US Fire's policy did not come into play because Worcester exhausted its policy limits and there was, as stated in Condition H of US Fire's policy, no "other collectible insurance available to the 'Insured.' "

We turn next to the question whether Worcester had exhausted its policy limit. US Fire's first contention on this point is that *Aetna Cas. & Sur. Co.* v. *Sullivan*, 33 Mass. App. Ct. 154 (1992), holds that when an insurer is faced with multiple claims against its insured, the insurer has a duty to use its policy limits reasonably and in good faith to settle as many claims as reasonably possible in order to reduce the insured's exposure. In *Aetna, id.* at 157-158, the court stated:

> "Under what we believe to be the fair meaning of the [policy] language, in the circumstances, the insurer would be discharged from any further duty to defend if it should make a payment equal to the maximum policy limits either to settle a claim against the insured *or* in total or partial satisfaction of a judgment against the insured upon conclu-

sion of the litigation [emphasis added]. See *Lumbermens Mut. Cas. Co.* v. *McCarthy*, 90 N.H. 320, 324 (1939). [Footnote omitted.] For example, in the case of multiple claims against an insured, good faith settlement with one claimant, or payment of all or part of a judgment favoring one claimant, the policy language would have the effect of discharging the insurer from defending additional claims beyond the policy limits. See *Johnson* v. *Continental Ins. Cos.*, 202 Cal. App. 3d 477, 485 (1988). The insurer, having exhausted the policy limits *and* provided a defense, the insured could not reasonably expect more [emphasis in original]. The situation is different, however, when an insurer seeks to pay the full amount of coverage without a judgment and without obtaining a release of the insured from at least one personal injury claimant."

That duty, the argument continues, precludes an insurer from squandering its policy limit and then abandoning the insured without having obtained as much protection for its insured as is reasonably possible while leaving the insured subject to further litigation.

Although we, of course, accept the settled and obvious premise of US Fire's argument, that Worcester had the duty to act reasonably and in good faith in fulfilling its contractual obligations to indemnify and to defend Youngblood in accordance with the terms of its policy, there is nothing in the record that even remotely suggests that Worcester squandered its policy limit in fully settling five claims in exchange for $150,500 and partially settling the sixth for $849,500. Had Worcester done as US Fire seems to argue, that is, first paid its policy limit to St. Paul, US Fire then would have been left to defend against the remainder of St. Paul's claim ($1,900,000) as well as negotiate settlements with the remaining five claimants that had been obtained by Worcester for $150,500. In the absence of any record support for the allegation that Worcester "squandered" its policy limits without obtaining adequate protection for Youngblood, we think the argument is no more than a complaint that Worcester failed to give US Fire's interests priority over those of Youngblood.

US Fire next argues that whether Worcester had exhausted its

policy limit was a disputed question of fact. It claims that in settling the claims against Youngblood, Worcester paid three of the five claimants a total of $3,000 in counsel fees which they incurred in defending against Worcester's action against them under G. L. c. 231A. There are three problems with US Fire's argument.

First, none of the arguments now raised on appeal by US Fire appear, from the record appendix before us, to have been presented to the judge prior to her ruling on the cross motions for summary judgment. Rather, and as best we can determine, this issue was raised for the first time on US Fire's motion for reconsideration and motion to vacate the judgment pursuant to Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974).

Second, US Fire's argument before us is based on information set out in the three claimants' settlement petitions. However, those petitions were provided to US Fire by Worcester well before argument was held on the cross motions for summary judgment. Nonetheless, US Fire did not raise this issue that it now presents on appeal until after the judge had ruled on the cross motions.

Third, those settlement petitions do not support US Fire's argument that Worcester paid $3,000 in counsel fees to the claimants and then deducted that amount from its policy limit. Although those petitions included a deduction for the payment of counsel fees to Worcester, Worcester was not a signatory to these petitions for settlement. On the other hand, the releases obtained by Worcester from the claimants in exchange for the settlement payments make no reference to counsel fees.

Suffice it to say, we see nothing in these arguments that leads us to conclude that the judge was in error in denying US Fire's postjudgment motions.

Proceeding on the premise that Worcester was in breach of its duty to defend, US Fire's final argument is that it is entitled to recover from Worcester the attorney's fees that it incurred in defending Youngblood against the remainder of St. Paul's claim. See *Preferred Mutual Ins. Co.* v. *Gamache*, 426 Mass. 93, 98 (1997), where the court held that under the policy there in issue, the insured was entitled to the reasonable attorney's fees and expenses "incurred in successfully establishing the insurer's

duty to defend under the policy." See also *Rubenstein* v. *Royal Ins. Co. of America*, 429 Mass. 355, 356-360 (1999); *Hanover Ins. Co.* v. *Golden*, 436 Mass. 584, 586-588 (2002). Relying on *Preferred Mutual, Rubenstein*, and *Golden*, US Fire argues that because Youngblood could have recovered these fees against Worcester, it can stand in Youngblood's shoes and recover its fees under Condition I of its policy which is entitled "Transfer of Rights of Recovery Against Others to Us."

Because we have concluded that Worcester was not in breach of its duty to defend, the premise of US Fire's argument on this contention fails.

*Judgment affirmed.*