Leibensperger, Edward P., J.
INTRODUCTION
Plaintiff Bay State Gas Company (Bay State) brings this suit against defendant Liberty Mutual Insurance Company (Liberty) and others seeking to recover approximately $600,000 incurred for (1) defense costs and (2) payments for damages sustained by various claimants arising out of a September 10, 2007 explosion. Bay State alleges that it tendered demands for defense and indemnity with respect to these claims to Liberty, its insurer, and that the demands were inappropriately denied. The matter is before the court on Liberty’s two-part motion: (1) for summary judgment as to the date Liberty’s coverage obligation to Bay State began, and (2) for a limitation on discovery. Embedded in the second part of Liberty’s motion (to limit discovery) is, in essence, a second request for summary judgment; namely, that Bay State cannot maintain a claim for defense costs or indemnity as a result of Liberty expending the policy limit to resolve a claim against another insured under the policy. For the reasons state below, the first part of Liberty’s motion is ALLOWED, and the second part is DENIED.
BACKGROUND
On September 10, 2007, Bay State, defendant Robert J. Devereaux Corp. (Devereaux), and Crana Excavating (Crana) were performing construction work at 39 Lind Street, Easton, Massachusetts when there was a gas explosion and fire (the incident). Bay State was the general contractor on the project and subcontracted with Devereaux to perform certain work. Devereaux further subcontracted with Crana for excavation work. The explosion caused injuiy to a number of persons as well as property damage to the surrounding area. As a result, multiple claims were asserted against Devereaux and/or Bay State. After much investigation, the cause of the gas explosion is still disputed but has been narrowed to two possibilities: *350 (1) a Crana employee caused the gas leak by hitting a service line in the course of performing excavation work outside the home, or (2) Bay State employee John Kelly caused the gas leak by incorrectly dismantling the service inside the basement of the home.
At the time of the accident, Devereaux was a Named Insured under a Commercial General Liability policy (the policy) with Liberty. The policy provides Devereaux, as the Named Insured, with liability coverage for claims alleging bodily injury and property damage, among other things. The policy has a $1 million limit of liability. Under Devereaux’s contract with Bay State, Devereaux agreed to add Bay State as an “additional insured” under the policy and did so. Devereaux also agreed to indemnify Bay State from and against all claims arising out of the negligence, in whole or part, of Devereaux or its subcontractors.
Insured-Insurer Communications
On the day of the incident, Devereaux immediately informed Liberty that there was an explosion and reported that Crana may have caused it by hitting a gas line with a backhoe. In response, Liberty sent a claims handler, Barry Cheskin, to the scene to investigate the incident. The first suit naming Devereaux, only, as a defendant was filed on October 10, 2007, thirty days after the underlying incident. This suit was brought by John Kelly, the Bay State employee at the site.
Bay State retained counsel on the day of the explosion. On September 13, 2007, Bay State received a “First Set of Information Requests” regarding the explosion from the Department of Public Utilities (DPU) pursuant to 220 Code Mass. Regs. §§69.00 et seq.[2] and §§100.00 et seq.[3] Later, Bay State received a “Notice of Intervention” and “First Set of Document and Information Requests” from the Attorney General on October 17, 2007 pursuant to G.L.c. 12, §11E (2008 ed.).[4]The DPU subsequently issued a “Notice of Procedural Conference” to Bay State on December 20, 2007, for the purposes of determining the cause of the gas leak and subsequent explosion. Liberty’s expert consultant, Gary Pease, was included on the list of interested persons attached to the notice, and Liberty representatives attended the Procedural Conference initiated by the DPU. On February 12, 2008, Bay State requested Devereaux’s assistance in responding to certain DPU information requests that related to Devereaux’s involvement in the incident.
Four days after the explosion, Bay State, through its attorney, spoke with Liberty’s New England Director of Technical Claims, Debra Hopkins, and demanded defense and indemnity pursuant to the policy.[5] Hopkins responded that Liberty’s information identified Bay State as the responsible party for causing the explosion and therefore Liberty declined to provide coverage to Bay State on the ground that the policy did not apply to Bay State, as an additional insured, for damages arising out of the sole negligence of Bay State. As a result, Bay State assumed the responsibility of paying its own legal costs and, later, settled several claims asserted against Bay State.
On October 15, 2007, Bay State sent correspondence to Liberty requesting Liberty’s participation in an interim funding agreement designed to facilitate settlement of the claims arising out of the incident. Liberty did not formally respond to this request, but an internal claims note dated that same day indicates that Liberty employee Barry Cheskin spoke with Bay State manager Jed Rice regarding coverage. Bay State and Liberty subsequently met face-to-face to discuss coverage issues on December 12, 2007. At the meeting, Bay State again made a demand for defense and indemnity. Additionally, Bay State asked for a copy of the policy from Liberty and received it on January 10, 2008. Subsequently, Bay State received a claim letter from the Town of Easton and forwarded it to Liberty on January 25, 2008. Liberty allegedly prepared a formal letter denying coverage, dated April 7, 2008, but Bay State never received the letter as it was returned to a Liberty office. By letter dated September 17, 2008, Bay State notified Liberty of a settlement demand from an individual injured in the explosion and again requested Liberty’s participation in the settlement. Liberty did not respond to that request. On August 19, 2009, Bay State was served with a complaint filed by Robert and Jennifer Lincoln and Union Mutual Fire Insurance Company in connection with the incident. This was the first lawsuit naming Bay State in connection with the incident. Bay State notified Liberty of the lawsuit and sent two demand letters requesting defense and indemnify coverage on August 25, 2009, and October 22, 2009, respectively.
Apparently having received no reply from Liberty, Bay State sent another letter on December 8, 2009, to demand coverage for the Lincoln action and another claim advanced by two individuals, Mr. and Mrs. Balsamo. Liberty did not respond to the letters until it issued a reservation of rights letter to Bay State on December 14, 2009. In that letter, Liberty acknowledged that Bay State was potentially covered under the policy and agreed to provide a defense to Bay State, subject to a reservation of rights. Liberty’s reservation of rights letter stated that Liberty would provide Bay State with a defense for the two suits in which Bay State was named as a defendant — the Lincoln[6] and Tamili[7] actions.
On January 7, 2010, Bay State sent another demand letter to Liberty requesting it to participate in settling claims that were advanced by two individuals, Mr. and Mrs. Kavanaugh. Liberty did not immediately respond to this request.[8] On February 16, 2010, however, Liberty sent Bay State another reservation of rights letter in which Liberty agreed to provide Bay State with a defense pertaining to five suits naming Bay State as a defendant and arising out of the underlying incident. The letter also recognized Bay *351 State as a potential additional insured under the policy with respect to these actions.
On June 1, 2010, Liberty, on behalf of Devereaux, settled the claim brought by Bay State employee John Kelly against Devereaux.[9] Kelly was at the work site when the explosion occurred and suffered serious bodily injury. The parties in that action agreed to settle for $1.5 million, which resulted in Liberty exhausting the $1 million policy limit. The excess insurer, Everest Re, provided the additional $500,000. Liberty did not inform Bay State in advance that it intended to exhaust the policy limit by settling the Kelly case. It appears, however, that Bay State was aware of a tentative settlement agreement in the Kelly case by at least May 19, 2010.
On August 6, 2010, Liberty paid for certain defense fees and costs incurred by Bay State, in the amount of $39,427.80, for services performed from and after the date that Liberty issued its first reservation of rights letter. On August 23, 2010, representatives of Bay State, Liberty, and Everest Re participated in a conference call in which the parties agreed that Bay State would submit invoices of its defense costs to Liberty and documentation of its settlement payments. The parties dispute whether Liberty actually agreed to reimburse Bay State or only to examine the invoices to determine whether Liberty had any obligation. On December 13, 2010, Liberty informed Bay State that, because it had exhausted the policy limit, Liberty’s duty to defend or indemnify Bay State has ended.
On June 24, 2011, Liberty offered a settlement to Bay State for all “non-duplicative” defense costs incurred by Bay State from August 2009 (the date of the first lawsuit against Bay State) to the settlement of the Kelly case (June 1, 2010) in the amount of $123,128.65. Bay State rejected the offer.[10]
Coverage Issues
Bay State alleges that Liberty failed to act in good faith in responding to its demand for defense and indemnity. Bay State argues that Liberty essentially ignored Bay State’s numerous requests for coverage until two years after the incident and that Liberty acted in bad faith by deciding, unilaterally, to exhaust the policy limit in settlement of the Kelly claim without notifying or consulting with Bay State. Bay State argues that Liberty’s pattern of unresponsiveness and its failure to issue a formal coverage opinion for more than two years from the date of the explosion constituted an unfair claim settlement practice in violation of G.L.c. 176D, §3(9). Liberty responds that Massachusetts law provides insurers with discretion to settle claims in multi-plaintiff, excess exposure, cases and argues that this discretion defeats Bay State’s indemnity claim as a matter of law. Had it failed to use its available indemnity coverage to limit Devereaux’s exposure in the Kelly case, Liberty argues, it could anticipate a bad faith claim from Devereaux. An insurer, the argument continues, cannot be forced to “watch both flanks’’ in such a manner.
Liberty further contends that, as a matter of law, it did not owe any defense obligation to Bay State before August 19, 2009, the date of service of the first suit filed against Bay State. Liberty claims that its duty to defend under the policy does not begin until a “suit” is filed. Bay State, on the other hand, argues that Liberty’s contractual obligations to Bay State began prior to suit being filed. Specifically, Bay State contends that Liberty’s duty to defend and indemnify began when it became reasonably clear that Bay State was entitled to coverage under the terms of the policy and there were likely claimants against Bay State. Bay State further contends that, because Liberty’s duty to defend began prior to the commencement of the first suit against Bay State, Bay State is entitled to recover the defense costs it incurred while investigating and defending itself prior to August 19, 2009.
The Policy
Liberty issued the relevant CGL policy to Devereaux as the Named Insured. Pursuant to an Additional Insured Endorsement, Bay State was named as an additional insured under the policy. The policy provides that Liberty has “the right and duty to defend the insured against any ‘suit’ seeking those damages [arising from bodily injuiy or property damage].” It requires an insured to notify Liberty “as soon as practicable of an ‘occurrence’ or an offense which may result in a claim.” Liberty “may, at [its] discretion, investigate any ‘occurrence’ and settle any claim or ‘suit,’ ” and “[n]o insured will, except at that insured’s own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Liberty’s] consent.” The policy defines the word “suit” as “a civil proceeding in which damages because of ‘bodily injury,’ ‘property damage’ or ‘personal and advertising injury’ to which this insurance applies are alleged.”[11] The word “occurrence” is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” The term “claim” is not defined in the policy. Liberty’s “right and duty to defend ends when [it] has used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A [bodily injury and property damage liability] or B [personal and advertising injury liability] or medical expenses under Coverage C.”
With respect to additional insureds, such as Bay State, the policy provides that an organization is an additional insured only with respect to liability for damages caused by the negligent acts or omissions of the Named Insured (here, Devereaux), or the negligent acts or omissions of those acting on the Named Insured’s behalf (here, Crana). The policy further adds that “[t]here is no coverage for the additional insured . .. arising out of the sole negligence of the additional insured or by those acting on behalf of the additional *352 insured.” Thus, as an “additional insured,” Bay State was not entitled to coverage for any claims arising out of the sole negligence of Bay State.
DISCUSSION Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively showing that there is no triable issue of fact. See Kourouvacilis, 410 Mass. at 711. The burden on a moving party who does not have the burden of proof at trial may be discharged by showing that there is an absence of evidence to support the non-moving party’s case. Id. The moving party can meet its burden by either submitting affirmative evidence that negates an essential element of the non-moving party’s claim, or by demonstrating that the non-moving party’s evidence is insufficient to establish an essential element of its claim. Id. at 715-16.
Analysis Liberty’s Duty to Defend Bay State
An insurer’s duty to defend is antecedent to, and independent of, the duty to indemnify. Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989); Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 35 (1st Cir. 1997). The duty to defend is not determined by reference to facts proven at trial, Millipore, 115 F. 3d at 35, but rather on the facts alleged in the complaint, as well as on the “facts known or readily knowable by the insurer that may aid in its inteipretation of the allegations in the complaint.” Billings v. Commerce Ins. Co., 458 Mass. 194, 200 (2010). The duty is traditionally implicated “when the allegations in a complaint are reasonably susceptible to an interpretation that states or roughly sketches a claim covered by the policy terms.” Billings, 458 Mass. at 200. The possibility of coverage is sufficient to trigger the duty to defend and the complaint need not unequivocally make out a claim within the coverage. Id. at 201 (citing Sterlite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 319 (1983)); Wyman-Gordon Co. v. Liberty Mutual Fire Ins. Co., 2000 WL 34024139 at *3 (Mass.Super. 2000) (11 Mass. L. Rptr. 763] (“even if a complaint on its face does not appear to fall within the ambit of policy coverage, the insurer may have a duty to defend if additional facts are known or available to it that suggest the claim is covered”).
Here, Liberty argues that its duty to defend Bay State did not begin until August 19, 2009, the earliest date on which Bay State was subject to a “suit” as defined in the policy. Absent a “suit,” Liberty argues that its contract with the insured does not include an obligation to defend.
The Supreme Judicial Court examined nearly identical policy language regarding the duty of an insurer to defend the insured. See Hazen Paper Co. v. US Fidelity & Guar. Co., 407 Mass. 689, 691 (1990). In Hazen, the word “suit” was not defined in the policy. Id. at 693. The Court analyzed whether “suit” should be read literally in all cases to require a lawsuit before the duly to defend arises. The Court rejected that concept. Instead, the Court considered whether a notice from the Environmental Protection Agency (EPA) received by the insured asserting environmental liability pursuant to federal statute gave rise to “consequences ... so substantially equivalent to the commencement of a lawsuit that a duty to defend arose immediately.” Id. at 696. Noting that the EPA notice was more consequential than a “conventional demand letter based on a personal injury claim,” the Court held that the duty to defend was triggered in that circumstance. Id. See also, Zecco, Inc. v. Travelers, Inc., 938 F.Sup. 65, 67 (D.Mass. 1996) (noting that the SJC has “eschewed such literalism [of requiring a formal suit to trigger the duty]”); Preferred Mutual Ins. Co. v. Gordon, 2003 WL 21077026 at *8 (Mass.Super. 2003) (“Notice of Responsibility” letter to insured from Department of Environmental Protection triggered insurer’s duty to defend). Thus, the duty to defend may be triggered by a pre-suit letter “where an insured’s failure to respond adequately to pre-suit letter would significantly affect the insured’s ability to defend itself in a subsequent action arising out of the same subject matter and [the letter] is substantially equivalent to the commencement of a lawsuit.” Zecco, 938 F.Sup. at 67 (citing Hazen, 407 Mass. at 696).
In the present case, the word “suit” is defined in the policy. The definition requires “a civil proceeding” which, itself, is not further defined. The definition appears to be the substantial equivalent of a “suit” such that the analysis provided by Hazen Paper is still applicable.
The DPU and Attorney General Letters
Relying on Hazen, Bay State argues that Liberty’s duty to defend arose when Liberty became aware of the inquiries initiated by the DPU and attorney general concerning the explosion. Bay State contends that it had no practical choice but to respond and participate in the DPU and attorney general proceedings, as the process could result in the imposition of civil fines and/or penalties if the DPU investigation found Bay State in violation of any regulations. In Zecco, the court discussed what kinds of pre-suit letters may invoke an insurer’s duty to defend under Hazen and identified three relevant factors: (1) whether the failure to comply with the letter will itself affect the substantiality of the insured’s liability, either by making liability more likely or by subjecting the insured to some particular penalty; (2) whether the letter is from a governmental entity or a private party; and (3) the tone of the letter. 938 F.Sup. at 68; see also Liberty Mutual Ins. Co. v. Black & Decker Corp., 2005 WL 102964 at *4 (D.Mass. 2005) (applying Zecco factors in analyzing whether pre-suit letter triggered insurer’s duty to defend).
*353 Here, the DPU and attorney general inquiries fail to invoke the insurer’s duty to defend. Both the DPU and the attorney general sent Bay State information requests relating to the incident. The purpose of these requests was to develop factual information. The information requests, on their face, do not allege that Bay State committed any violation or that Bay State was, or could be, liable for damages. Compare Hazen Paper, 407 Mass. at 693 (EPA letter triggered duly where letter notified Hazen “of liability which your company may incur or may have incurred” and stating that EPA had “determined that actual releases of hazardous substances . . . are occurring”). Similarly, the DPU’s “Notice of Procedural Conference” did not allege any wrongdoing on the part of Bay State. The purpose of the conference was “to establish a testing protocol on the pipe specimens” in order to “determin[e] the possible causes of the release of natural gas and minimiz[e] the possibility of a recurrence.” DPU Notice of Procedural Conference at 1. Although the DPU’s investigation could potentially result in the imposition of civil penalties, the DPU did not issue a Notice of Probable Violation (NOPV) to Bay State. See Liberty Mutual Ins. Co. v. Black & Decker Corp., 2005 WL 102961 at *4, n.2 (distinguishing between a governmental letter that alleges damage and requires a response, which is the functional equivalent of a suit, and a governmental letter that is more fairly characterized as a threat of a future suit that is not yet ripe). For these reasons, the DPU and attorney general notices are not the substantial equivalent of a suit or civil proceeding against Bay State. The notices did not trigger the duty to defend.
Pre-Suit Defense Costs
Bay State also contends that the receipt by it of numerous pre-lawsuit claims arising from the explosion required Liberty to provide a defense. Bay State relies upon Liberty Mutual Ins. Co. v. Continental Cas. Co., 771 F.2d 579, 586 (1st Cir. 1985), where the court found that a duty to defend was triggered before the suit was commenced. The court’s holding, however, was confined to the “circumstances of this particular case.” Id. at 586. That action arose out of the failure of glass panels that the insured, Robertson, installed on the Hancock Tower in Boston that resulted in significant property damage. Id. at 580-81. The principal parties involved in the construction of the building agreed to solve the problem of the defective panels before filing any suit. Id. at 581. A tolling agreement was entered into that delayed the filing of the lawsuits. Id. at 586. For these reasons, suit was not filed against Robertson until more than two years later. Id. at 581. The insurer, Continental, denied coverage based upon provisions in the policy and Liberty (as Robertson’s assignee) paid for the defense. Id. After the liability suits were settled, a declaratory action established that Continental had a duty to defend the suits. Id.
In upholding the award of pre-suit defense costs, the court noted that, without the tolling agreement, the suit would have been filed much sooner, and “the technical issue now before us would not have arisen.” Id. at 586. Additionally, the court highlighted the fact that it was already established that Continental had breached its duty to defend. Id. at 585. Here, by contrast, the duly to defend has not been established. The circumstances of this case do not provide any similarly compelling reasons to depart from the general rule that an insurer is not liable for defense costs that arise before an insurer’s duty to defend is invoked. Moreover, Liberty was decided before the Supreme Judicial Court, in Hazen, set forth the circumstances under which an insurer’s duty to defend may be triggered prior to the filing of a suit.
Applying the principles enumerated in Hazen and Zecco, I find that Liberty’s duty to defend Bay State was not triggered until August 19, 2009, the date Bay State was first subject to a lawsuit arising from the incident. The notices and claims received by Bay State prior to that date of potential claims for damages did not put Bay State in a position of having to take some protective action or else be prejudiced in its ability to defend a subsequent lawsuit. The insurance contract gave Liberty the right to require a lawsuit asserting a claim for damages before providing a defense.[12] Accordingly, summary judgment is entered declaring that Liberty’s duty to defend commenced on August 19, 2009.
Liberty’s Obligation to Indemnify Bay State
The second part of Liberty’s motion seeks an order limiting discovery from Bay State because “as a matter of law Bay State’s claim under the duty of indemnity fails in light of Liberty’s exhaustion of the policy limit in settling the action brought by Bay State’s employee, John Kelly, against Devereaux. . .” Liberty Motion, p. 2 (emphasis in original). Thus, Liberty’s motion raises the question of whether Bay State may proceed on a claim to be indemnified for all or part of the settlements paid by it. As described below, Liberty is wrong when it contends that its obligation to indemnify is satisfied, as a matter of law.
In Hartford Cas. Inc. v. New Hampshire Ins. Co., 417 Mass. 115 (1994), the Supreme Judicial Court set forth the standard of care that an insurer owes to its insureds. The insurer is held to a standard of reasonable conduct in defense of its insured, and must act in good faith. Id. at 118-19. The court then made clear that it was establishing a negligence standard:
The negligence standard by which the actions of an insurer concerning settlement will be tested hereafter will be in practice not significantly different from the good faith test that has been evolving in the Commonwealth. The test is not whether a reasonable insurer might have settled the case within the policy limits, but rather whether no reasonable *354 insurer would have failed to settle the case within the policy limits.
Id. at 121.
In general, the good faith standard imposes two obligations on the insurer: (1) to attempt to settle claims without regard to the policy limit, and (2) to exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based. Id. at 119 (citing Murach v. Mass. Bonding & Ins. Co., 339 Mass. 184, 187 (1959)); Bolden v. O'Connor Cafe of Worcester, Inc., 50 Mass.App.Ct. 56, 59, n.9 (2000). “The insurer must inform the insured of its conflicting interests, advise him of his rights, and keep him abreast of settlement offers and meaningful developments.” Peckham v. Continental Cas. Ins. Co., 895 F. 2d 830, 834 (1st Cir. 1990).
Where a single liability policy covers multiple insureds, and where the claims against one or both of the insureds are sure to exceed the policy limits, jurisdictions are split over how much discretion the insurer has to allocate the policy proceeds. Compare Smoral v. The Hanover Ins. Co., 37 A.D. 2d 23, 25 (N.Y. App. Div. 1971) (holding that insurer could not settle with one insured and leave another insured “completely exposed”), with Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 768 (5th Cir. 1999) (rejecting the Smoral case and holding that, under Texas law, insurer is not liable where a settlement agreement undertaken on behalf of one insured eliminated the coverage for a co-insured). Under Massachusetts law, the insurer’s duty is measured by the good faith/negligence standard. So long as the insurer acts reasonably and in good faith to reduce the exposure to its insureds, considering the paucity of the policy limits, the insurer’s judgment will not be subject to question. US Fire Ins. Co. v. Worcester Ins. Co., 62 Mass.App.Ct. 799, 802 (2005); Peckham, 895 F.2d at 835. The insurer has the right to exercise its professional judgment in settling claims, but must do so “mindful of the insured’s best interest and in good faith.” Peckham, 895 F.2d at 835. Although the courts are cognizant of the “thorny problem” faced by insurers where there are multiple claims and limited coverage, see id., an insurer’s duty to expend its policy limit reasonably “precludes an insurer from squandering its policy limit then abandoning the insured without having obtained as much protection for its insured as is reasonably possible while the leaving the insured subject to further litigation.” US Fire, 62 Mass.App.Ct. at 803.
Whether an insurer acted reasonably and in good faith are fact questions. See Alan Corp. v. Int’l Surplus Lines Ins. Co., 823 F.Sup. 33, 44 (D.Mass. 1993) (whether insurer’s conduct in denying coverage was unreasonable is a question of fact). Here, Bay State has established a genuine issue of material fact as to whether Liberty acted unreasonably with respect to its decision to exhaust the entirety of the policy limit on behalf of Devereaux while leaving Bay State exposed to a raft of claims. Liberty never informed or notified Bay State of its intention to exhaust the policy in the Kelly settlement. See Murach, 339 Mass. at 189 (where claim is made for an amount greater than the limits of the policy, insurer has duty to advise its insured of possibility that he may be exposed to excess liability); Peckham, 895 F.2d at 835 (insurer’s duty to apprise insured “becomes more important” when it exhausts the policy limits in settlement with one claimant and leaves the insured unprotected in respect to other claimants). In addition, Bay State alleges that Liberty ignored its requests for defense and indemnity for a period of more than two years. See Alan Corp., 823 F.Sup. at 44 (whether or not insurer’s six-month delay in denying coverage was “unreasonable,” and thus rose to the level of a violation of G.L.c. 176D, is a question of fact).
Accordingly, Liberty’s argument — that its decision to exhaust the limit of the policy in the Kelly settlement is beyond challenge as a matter of law — is incorrect. Bay State raises issues of fact for trial as to whether Liberty acted reasonably and in good faith when deciding how to expend its policy limit. Bay State must prove that Liberty’s conduct fell below the requisite standard and that such conduct caused harm to Bay State. Liberty’s obligation to treat its insureds fairly and in good faith with respect to settlements of claims arose from the date Liberty was first aware of the underlying incident. Thus, there is no basis to modify this court’s January 11,2012 discovery order and part two of Liberty’s motion is DENIED.
CONCLUSION
For the foregoing reasons, Liberty’s motion for summary judgment with respect to the commencement date of its duty to defend is ALLOWED, and Liberty’s motion to revise the scope of discovery is DENIED.

 220 CMR §§69.00 et seq. establishes the procedures for determining the nature and extent of violations of the codes and regulations adopted by the DPU. The regulations provide for the imposition of civil penalties for each violation as determined by the investigation.

 220 CMR §§100.00 et seq. is the Massachusetts Gas Distribution Code, which is designed to “ensure safe operating practices for persons engaged in the storage, transportation, and distribution of gas.” 220 CMR §100.01.

 G.L.c. 12, §1 IE authorizes the attorney general to intervene in administrative, regulatory, or judicial proceedings in connection with any matter involving gas companies doing business within the Commonwealth.

 Liberty disputes that Bay State demanded full defense and indemnity and cites to the internal claim notes of Debra Hopkins, dated September 14, 2007, memorializing her conversation with Bay State’s counsel. The notes do not explicitly say Bay State “demanded” coverage and characterize Bay State’s counsel as “fishing a little." An affidavit by Bay State’s counsel, however, states that he did demand that Liberty take *355 over the defense and indemnify Bay State for costs already incurred.

 See Lincoln et al. v. Bay State Gas Co. et al., Docket No. SUCV-09-02351.

 See Mathew Tarulli v. Bay State Gas Co. et al., Docket No. SUCV-09-03557-H.

 In disputing the allegations that Liberty failed to adequately respond to Bay State’s demand letters, Liberty cites to an e-mail dated January 1, 2010, from Betty A. D’Angelo, one of its senior technical claims specialists, to Bay State counsel John Rooney. Although partially redacted, the e-mail does not appear to address Bay State’s request for Liberty’s participation in the Kavanaugh settlement, but rather states that Liberty will not reimburse Bay State for pre-suit defense costs.

 See John R. Kelly v. Robert J. Devereaux Corp., Docket No. SUCV-07-04350-G.

 Bay State did not cash the check and returned it to Liberty’s counsel.

 “Suit” is also defined to include (1) an arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with Liberty’s consent, or (2) any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with Liberty’s consent.

 Regardless of Liberty’s contractual right to insist on a lawsuit before providing a defense to its insured, Liberty still must not commit deceptive or unfair acts in violation of G.L.c. 93A, §11. With respect to providing a defense, however, there can be no unfair or deceptive act by Liberty by insisting upon its contractual right.